Samuel A. CORABI, Administrator, d.b.n. of the Estate of Harold Brunn, Jr., Deceased

v.

AUTO RACING, INC., a Pennsylvania Corporation and Pinegrove Speedway, Inc., a Pennsylvania Corporation, Appellants.

No. 12760.

United States Court of Appeals Third Circuit.

Argued Dec. 1, 1958.

Decided Feb. 26, 1959.

Russell J. Butler, Jr., Pittsburgh, Pa., (Weis & Weis, Pittsburgh, Pa., on the brief), for appellants.

Adolph L. Zeman, Canonsburg, Pa., for appellee.

Before BIGGS, Chief Judge, and MARIS, GOODRICH, McLAUGHLIN, KALODNER, STALEY and HASTIE, Circuit Judges.

BIGGS, Chief Judge.

The operative facts in this case are undisputed. Brunn, a minor twelve years old, lived with his mother in Allegheny County, Pennsylvania. He died as a result of injuries sustained on May 30, 1957, when a wheel detached from a racing car at Pinegrove Speedway in Clarion County, Pennsylvania, went into the stands and struck him. On July 16, 1957, the Register of Wills of Allegheny County granted letters of administration to Brunn's mother. On May 15, 1958, Mrs. Brunn by petition to the Orphans' Court of Allegheny County asked leave to resign as administratrix, stating: "It is the desire of your petitioner that an action be instituted to recover for the death of her son in the District Court of the United States for the Western District of Pennsylvania and herewith tenders her resignation as * * administratrix in order that Letters of Administration may be granted to a non-resident for the purpose of such action."

The Orphans' Court granted Mrs. Brunn's petition and on May 21, 1958, the Register of Wills granted letters of administration, d. b. n., to Corabi, the plaintiff-appellee here, a resident of Steubenville, Ohio. The suit at bar was then instituted based on diversity of citizenship and the necessary jurisdictional amount. A motion was filed by the defendants, the appellants here, to dismiss the action on the ground that any diversity of citizenship which existed between the parties was "simulated" and "designed solely and collusively to create jurisdiction" in the court below. The motion was denied by that court, conceiving itself to be bound by the decisions of this court. Believing our rulings to be at variance with those of other Courts of Appeals, [1] the court below, concluding that there was a controlling question of law, certified this in an order pursuant to Section 1292(b), Title 28 U.S.C. By our order of October 27, 1958, we granted permission to appeal from the interlocutory order of the court below. This is the appeal before us.

The issue presented for our determination can be stated as follows: Whether the resignation or renunciation of a resident administratrix and the appointment of a non-resident administrator, d. b. n., for the express purpose of creating diversity of citizenship between the parties, was collusive and, therefore, in violation of Section 1359, Title 28 U.S.C. The statute provides: "A district court shall not have jurisdiction of a civil action in which any party, by assignment or otherwise, has been improperly or collusively made or joined to invoke the jurisdiction of such court."

We state first that insofar as any question of timeliness in respect to bringing the suit at bar is concerned the fact that Mrs. Brunn resigned as administratrix and Mr. Corabi was then designated as administrator d. b. n. is immaterial since the record shows that the suit was not commenced until after the appointment and qualification of the administrator d. b. n. It has been long settled that the plaintiff in a diversity suit must be entitled to bring it at the time the jurisdiction of the court attaches. See Chappedelaine v. Dechenaux, 1808, 4 Cranch 306, 8 U.S. 306, 308, 2 L.Ed. 629; Rule 17, Fed.R.Civ.Proc., 28 U.S.C.[2] This is a rule of procedure which governs actions such as that at bar in the United States district courts. In Fallat v. Gouran, 3 Cir., 1955, 220 F.

---

1. For an example see the decision of the Court of Appeals for the Eighth Circuit in Martineau v. City of St. Paul, 1949, 172 F.2d 777. But cf. McCoy v. Blakely, 8 Cir., 1954, 217 F.2d 227. The Supreme Court of the United States has not ruled on this issue.

2. Rule 17(a) provides: "Every action shall be prosecuted in the name of the real party in interest; but an executor, [or] administrator * * * may sue in his own name without joining with him the party for whose benefit the action is brought * * *."

2d 325, 326, we held that where the suit was brought by a general guardian for a mentally incompetent individual appointed by the Court of Common Pleas of Montgomery County, Pennsylvania,[3] the fact the general guardian may not have been the real party in interest was immaterial for it was the citizenship of the general guardian which governed his right to bring and maintain the suit and the citizenship of the real party in interest was immaterial insofar as the purposes of diversity jurisdiction were concerned if the general guardian had the capacity to bring and maintain the suit.[4] There can be no doubt in the case at bar that the administrator d. b. n. has the capacity to maintain the suit though, as was the case in Fallat, he may not be the real party in interest.[5]

We therefore have presented to us in pure form the issue of whether the institution of a suit such as that at bar by an administrator to secure federal jurisdiction is a violation of Section 1359, Title 28, U.S.C. In the terms of the statute was the administrator "improperly or collusively made" to invoke the jurisdiction of the court below? The earliest decision of this court, which has been cited to us or which we have been able to find, dealing with this question is Jaffe v. Philadelphia & Western R. Co., 3 Cir., 1950, 180 F.2d 1010, 1011–1013.[6] In that case, relying on Mecom v. Fitzsimmons Drilling Co., 1931, 284 U. S. 183, 189, 52 S.Ct. 84, 76 L.Ed. 233,[7] and pointing out that the Supreme Court had ruled that a state probate court decree could not be attacked collaterally in order to question the purpose behind it, this court held that diversity of citizenship had not been secured by collusion within the meaning of the federal statute and, in substance, that the motives for the appointment of a foreign administratrix were immaterial and would not be inquired into by the courts. We reiterated that view in substance in our Fallat decision in *note 2* cited to the text, 220 F.2d at page 327.[8]

The defendants attach importance to the decision in Lehigh Mining & Manufacturing Co. v. Kelly, C.C., 64 F. 401, affirmed 1895, 160 U.S. 327, 16 S.Ct. 307, 40 L.Ed. 444. This decision of the Supreme Court requires discussion in relation to the case at bar. In the cited case the officers and stockholders of a Virginia corporation organized a Pennsylvania corporation "to create a case cognizable by the Circuit Court of the United States for the Western District of Virginia." The Virginia corporation

---

**3.** The appointment of the general guardian in Fallat was made pursuant to the Pennsylvania Incompetents' Estates Act of 1951, 50 P.S.Pa. §§ 1631–2041 (Supp. 1954).

**4.** The complaint in the case at bar declares on both survival and wrongful death actions.

As to a survival action, see 20 P.S.Pa. § 320.102 (1950), defining "Fiduciary" and "Personal representative" to include executor or administrator; 20 P.S.Pa. § 320.603 (1950), concerning action by or against personal representative.

As to a wrongful death action, see 12 P.S.Pa. §§ 1601, 1602 (1953), establishing the cause of action and permitting "personal representatives" to sue; Rule 2201 Pa.Rules of Civ.Proc., 12 P.S.Pa. Appendix (Supp.1958), defining "personal representative" to include "executor" or "administrator"; Rule 2202 Pa.Rules of Civ.Proc., 12 P.S.Pa.Appendix (1951),

further establishing that personal representatives may sue.

**5.** See note to Rule 2002, Pa.Rules of Civ. Proc., 12 P.S.Pa.Appendix, p. 442. See also Rule 17(a), Fed.R.Civ.Proc., 28 U.S.C.

**6.** Compare Blumenthal **v.** Craig, 3 Cir., 1897, 81 F. 320.

**7.** In the Mecom case the appointment of a Louisiana administrator as plaintiff prevented the removal of the case to the federal court.

**8.** Such decisions of the Supreme Court as Coal Company v. Blatchford, 1870, 11 Wall. 172, 78 U.S. 172, 20 L.Ed. 179, and Chappedelaine v. Dechenaux, 1808, 4 Cranch 306, 8 U.S. 306, 2 L.Ed. 629, cited in Coal Company v. Blatchford, 11 Wall. at page 175, 78 U.S. at page 175, are not directly helpful for Section 1359 or its predecessor was apparently not before the Supreme Court in these cases.

passed to the Pennsylvania corporation without consideration "all of the right, title and interest" of the Virginia corporation but remained in existence. The stockholders of the two corporations were identical and Mr. Justice Harlan for the Supreme Court laid special emphasis on the fact that the Pennsylvania corporation if it succeeded in obtaining a judgment against the defendants could have been required by the stockholders of the Virginia corporation and by its own stockholders to reconvey the lands in controversy to the Virginia corporation without any consideration passing to the Pennsylvania corporation. The Supreme Court concluded that this was a fraud upon the Court and a device created to obtain and support diversity jurisdiction and was collusive and that Section 5 of the Act of March 3, 1875, 18 Stat. 470, the predecessor to present Section 1359 and substantially similar to it, required dismissal of the action. To like effect was the decision of Miller & Lux v. East Side Canal & Irrigation Co., 1908, 211 U.S. 293, 29 S.Ct. 111, 53 L. Ed. 189.

We would consider the decisions in Lehigh Mining and Miller & Lux as persuasive were it not for the later decision of the Supreme Court in Black & White Taxicab & Transfer Company v. Brown & Yellow Taxicab & Transfer Co., 1928, 276 U.S. 518, 48 S.Ct. 404, 72 L.Ed. 681. In this case the Supreme Court by Mr. Justice Butler said, 276 U.S. at page 525, 48 S.Ct. at page 405: "It requires no discussion to distinguish Lehigh Mining & Mfg. Co. v. Kelly * * *, and Miller & Lux v. East Side Canal Co. * * * *". In the Taxicab Company case a Tennessee corporation had been created for the alleged fraudulent purpose of giving a United States district court jurisdiction and to evade the laws of Kentucky. Cf. Erie R. Co. v. Tompkins, 1938, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188. Mr. Justice Butler stated: "Section 37 of the Judicial Code requires any suit commenced in a District Court to be dismissed, if it shall appear that the suit does not really and substantially involve a dispute or controversy properly within its jurisdiction or that the parties have been improperly or collusively made or joined, either as plaintiffs or defendants, for the purpose of creating a case cognizable in such court. The requisite diversity of citizenship exists. And the controversy is real and substantial. The privilege granted is valuable. Petitioner treats the contract as invalid and claims to be entitled, without the consent of the railroad company, to use railroad property to park its vehicles and solicit business. The railroad company has failed to protect the rights it granted. The motives which induced the creation of respondent to become successor to its Kentucky grantor and take a transfer of its property have no influence on the validity of the transactions which are the subject of the suit. The succession and transfer were actual, not feigned or merely colorable. In these circumstances, courts will not inquire into motives when deciding concerning their jurisdiction. McDonald v. Smalley, 1 Pet. 620, 624, 7 L.Ed. 287. It is enough that respondent is the real party in interest. Smith v. Kernochen, 7 How. 198, 216, 12 L.Ed. 666. The incorporation of respondent or its title to the business and contract in question is not impeached. Cooperation between it and the railroad company to have the rights of the parties determined by a federal court was not improper or collusive within the meaning of section 37. * * * The District Court had jurisdiction."

We cannot distinguish the facts of the Taxicab Company case in any practical way from those of the case at bar. In the instant case the controversy is real and substantial. Brunn's administratrix was discharged and the administrator d. b. n. was appointed prior to the inception of the suit, as we have already said. Unquestionably he possesses causes of action and is entitled to prosecute them for whatever they may be worth. By close reasoning the facts of the case at bar seem to fall outside of the ruling of the Lehigh Mining Co. case and within the ambit of the Taxi-

cab Company case. In view of the ruling of the Supreme Court in the latter case we cannot hold that the appointment of the administrator d. b. n. was improper or collusive within the meaning of Section 1359.

There are other considerations. The statute uses the phrase "improperly or collusively" to characterize the manufacture or joinder prohibited by it. The word "collusion" is a strong one.[9] The term "collusion" indicates "A secret agreement and cooperation for a fraudulent or deceitful purpose; deceit; fraud." Webster's New International Dictionary, 2 ed. The same authority quotes Spenser, "The foxe, maister of *collusion*," and citing Bouvier goes on to state the meaning of the term at law as "An agreement between two or more persons to defraud a person of his rights by the forms of law, or to obtain an object forbidden by law." Certainly to make use of state law to obtain diversity jurisdiction even though the object may be a high verdict in a federal court is not collusive within the ordinary meaning of that term. Moreover the word "collusion" generally is employed to indicate an illegal agreement or understanding between opposing sides of a litigation rather than to an arrangement effected by one side of the sort at bar. Here the plaintiff's side of the case acted for what it deemed to be its own benefit and was opposed heartily by the other party to the litigation. The terms "improper" or "improperly", according to Webster, mean "Not suited to the circumstances, design, or end; not appropriate, fit, or congruous; as, an *improper* medicine; *improper* dress." Webster gives as synonyms: "Improper, indecent, unseemly, indecorous, unbecoming, indelicate." The word "improperly" clearly connotes impropriety. We cannot perceive that here. Had Congress intended to prohibit the creation of federal diversity jurisdiction under such circumstances as those at bar it could have done so simply by omitting the words "improperly or collusively".

We conclude that the arrangement here made is not within the reach of Section 1359.[10] If what we deem to be the law is to be changed we think that it would be improper for that change to emanate from this court.

The judgment appealed from will be affirmed.

9. See Cohan and Tate, "Manufacturing Federal Diversity Jurisdiction by the Appointment of Representatives: Its Legality and Propriety", 1 Villanova Law Review 201, 245–247 (1956).

10. The following cases seem to support the views expressed in this opinion: Black & White Taxicab & Transfer Co. v. Brown & Yellow Taxicab & Transfer Co., 1928, 276 U.S. 518, 48 S.Ct. 404, 72 L.Ed. 681; Mecom v. Fitzsimmons Drilling Co., 1931, 284 U.S. 183, 52 S.Ct. 84, 76 L.Ed. 233; City of Chicago v. Mills, 1907, 204 U.S. 321, 27 S.Ct. 286, 51 L.Ed. 504; Blair v. City of Chicago, 1906, 201 U.S. 400, 26 S.Ct. 427, 50 L.Ed. 801; Mexican Central Railway Co. v. Eckman, 1903, 187 U.S. 429, 23 S.Ct. 211, 47 L.Ed. 245; City of New Orleans v. Gaines' Adm'r, 1891, 138 U.S. 595, 11 S.Ct. 428, 34 L.Ed. 1102; Manhattan Life Ins. Co. v. Broughton, 1883, 109 U.S. 121, 3 S.Ct. 99, 27 L.Ed. 878; Fallat v. Gouran, 3 Cir., 1955, 220 F.2d 325; McCoy v. Blakely, 8 Cir., 1954, 217 F.2d 227; Jaffe v. Philadelphia & Western R. Co., 3 Cir., 1950, 180 F.2d 1010; Kentucky Natural Gas Corp. v. Duggins, 6 Cir., 1948, 165 F.2d 1011; Curb and Gutter District No. 37 of City of Fayetteville v. Parrish, 8 Cir., 1940, 110 F.2d 902, 906; Harrison v. Love, 6 Cir., 1936, 81 F.2d 115; City of Detroit, Mich. v. Blanchfield, 6 Cir., 1926, 13 F.2d 13, 47 A.L.R. 314; O'Neil v. Wolcott Min. Co., 8 Cir., 1909, 174 F. 527; Goff's Adm'r v. Norfolk & W. R. Co., C.C.W.D.Va.1888, 36 F. 299; Hopkins v. Pennsylvania Power & Light Co., D.C.E.D.Pa.1953, 112 F.Supp. 136; In re Wertz' Estate (No. 1), 1955, 6 Pa. Dist. & Co.R.2d 429; Lichtenwalner v. Pennsylvania Power & Light Co., 1953, 86 Pa.Dist. & Co.R. 231; In re Fike's Estate, 1951, 80 Pa.Dist. & Co.R. 322.

The three following cases seem to support a contrary view: Lehigh Mining & Mfg. Co. v. Kelly, 1895, 160 U.S. 327, 16 S.Ct. 307, 40 L.Ed. 444; Martineau v. City of St. Paul, 8 Cir., 1949, 172 F.2d 777; Cerri v. Akron-People's Telephone Co., D.C.N.D.Ohio 1914, 219 F. 285.