Joseph E. BASS, Administrator of the Estate of John William Morris, Deceased, Plaintiff-Appellee,

v.

TEXAS POWER & LIGHT COMPANY, Defendant-Appellant.

No. 28955.

United States Court of Appeals, Fifth Circuit.

Aug. 19, 1970.

As Amended on Denial of Rehearing and Rehearing En Banc Denied Sept. 30, 1970.

Burford, Ryburn & Ford, Frank M. Ryburn, Jr., Wayne Pearson, J. Dan Bohannan, Dallas, Tex., Orgain, Bell & Tucker, Gilbert I. Low, Beaumont, Tex., for appellant.

John B. Murphrey, Brown, Kronzer, Abraham, Watkins & Steely, W. James Kronzer, Houston, Tex., for appellee.

Before GODBOLD, SIMPSON and MORGAN, Circuit Judges.

LEWIS R. MORGAN, Circuit Judge:

This appeal presents the issue of whether the appointment of an out-of-state administrator for the sole purpose of creating diversity of citizenship between the parties of a lawsuit in order to invoke the jurisdiction of the federal courts is "improper" or "collusive" under Section 1359, Title 28, United States Code.[1] The District Court held for jurisdiction. We reverse.

This wrongful death action was commenced in the Eastern District of Texas on July 21, 1969, under the Texas Wrongful Death Statute, Article 4671, et seq., Revised Civil Statutes of Texas. The decedent, John William Morris, was a resident of Texas and met his death in Texas on January 29, 1969. His estate is being administered by the County Court of Hardin County, Texas. The defendant Texas Power & Light Company is incorporated under the laws of Texas and has its principal place of business in Dallas. The statutory beneficiaries under Article 4671, et seq., supra, for whose benefit this action is being prosecuted, are all citizens of Texas. The administrator of Morris' estate and the named plaintiff in this action is Joseph E. Bass, who is, and at all times pertinent has been, a citizen of the State of Louisiana. It is candidly admitted by the plaintiff-appellee that Bass was appointed administrator of Morris' estate for the sole purpose of manufacturing or artificially creating diversity of citizenship so that the attorneys of Morris' statutory beneficiaries could invoke the jurisdiction of the District Court. Defendant-appellant's motion to dismiss for want of jurisdiction was denied, but the

---

1. Section 1359 provides:

A district court shall not have jurisdiction of a civil action in which a party, by assignment, or otherwise, has been improperly or collusively made or joined to invoke the jurisdiction of such court.

matter was certified to this court pursuant to 28 U.S.C. § 1292(b). We granted defendant-appellant leave to appeal from the District Court's interlocutory order on November 5, 1969.

The precise issue presented here has never been decided by this circuit. Until recently, we would have been constrained to uphold jurisdiction in this situation under the leading Third Circuit decision of Corabi v. Auto Racing, Inc., 1959, 264 F.2d 784, 75 A.L.R.2d 711 (*en banc*), which narrowly construed the meaning of the words "improper" and "collusive" as used in Section 1359, and refused any inquiry into the purpose behind the appointment of an out-of-state administrator. See also Jaffe v. Philadelphia & Western R. Co., 3 Cir., 1950, 180 F.2d 1010. However, the rule in Corabi is now dead. In Caribbean Mills, Inc. v. Kramer, 5 Cir., 1968, 392 F.2d 387, aff'd. (opinion) 394 U.S. 823, 89 S.Ct. 1487, 23 L.Ed.2d 9, this circuit rejected the narrow construction of Section 1359 which formed the basis of the Third Circuit's position in *Corabi* and held that an assignee for collection purposes cannot properly invoke federal diversity jurisdiction without divesting the assignor of his interest in the lawsuit. In doing so, the Court, speaking through Judge Thornberry, said:

> In the context of Section 1359 and its predecessor statutes, the phrase "improperly or collusively" means what the courts have said it means. Hence, an attempt to create federal jurisdiction by colorable assignment or *other device without substance* is "improper or collusive" within the meaning of the

statute. (Emphasis added.) At 393 of 392 F.2d.

In affirming, the Supreme Court, in a footnote, specifically reserved the question presented here.[2] In the meantime, however, the Third Circuit, against sitting *en banc*, expressly overruled *Corabi*, supra, and *Jaffe*, supra, in McSparran v. Weist, 3 Cir., 1968, 402 F.2d 867, cert. den. 395 U.S. 903, 89 S.Ct. 1739, 23 L.Ed. 2d 217.

After construing Section 1359 in light of its predecessors[3] and the interpretation given them by the courts,[4] the Court in *McSparran* held that the appointment of an out-of-state guardian solely for the purpose of creating diversity jurisdiction was "improper" and "collusive" within the meaning of Section 1359. The Court stressed the lack of substance in the appointment, saying:

> \* \* \* The collusion exists between the nonresident guardian and the applicant for his appointment in the state proceeding as a result of which one who would not otherwise have been named guardian has achieved the status from which he claims the right to sue because of his artificial selection solely for the purpose of creating jurisdiction. He is not chosen because of his capacity to manage the property of his ward, and indeed need have no experience in the management of property. He is outside the jurisdiction of the court which is to supervise his nominal activity. In truth none of the considerations which normally lead to the selection of a guardian affects the local appointing court's determination because it knows that in the "manufac-

2. The footnote reads in part:
Nor is it necessary to consider whether, in cases in which suit is required to be brought by an administrator or guardian, a motive to create diversity jurisdiction renders the appointment of an out-of-state representative "improper" or "collusive". 394 U.S. at 828, n. 9, 89 S.Ct. at 1490.

3. Section 1359, originating in the 1948 revision of Title 28, U.S.C., is a combination of the old anti-assignment statute, 28

U.S.C. § 41(1) (1940 ed.) derived from § 11 of the Judiciary Act of 1789, Act of Sept. 24, 1789, ch. 20, § 11, 1 Stat. 73 and the Act of Mar. 3, 1875, ch. 137, § 5, 18 Stat. 470, incorporated as § 37 of the Judicial Code of 1911, 28 U.S.C. § 80 (1940 ed.)

4. See the court's discussion and cases cited therein, Ferrara v. Philadelphia Laboratories, Inc., D.Vt., 1967, 272 F.Supp. 1000, aff'd 2 Cir., 1968, 393 F.2d 934.

tured" diversity case the guardian is not expected to manage any property for his supposed ward and usually will not continue in office or exercise any real function after any funds are recovered in the litigation. He is no more than a representative of the minor's counsel whom counsel provides in order to establish a diversity of citizenship which will permit him to bring the action in the federal court. As a straw party he does not stand in the position of a true fiduciary whose involvement in litigation is incidental to his general duty to protect the interests of those for whom he is responsible. At 873 of 402 F.2d

In discussing the necessity to inquire into the motive behind the appointment, the Court said:

> It has often been said that in judging whether diversity of citizenship exists the courts will not inquire into the motive which lead to the appointment of the personal representative. (Footnote omitted) While, of course, the desire to obtain diversity jurisdiction is not in itself improper, nevertheless it is not irrelevant in the determination of the question whether the fiduciary is in fact a straw fiduciary whose citizenship is to be disregarded. (Footnote omitted) Moreover, it is difficult to see how motive can be entirely ignored in ascertaining the purpose for which the representative is selected in view of the language of § 1359. The statute outlaws the creation of jurisdiction where a party has been improperly or collusively made or joined to invoke the jurisdiction of the court. While the statute does not ban the appointment of nonresident fiduciaries, the artificial selection of a straw representative who has no duty or function except to offer the use of his citizenship to create diversity in contemplated litigation is a violation of its provisions * * *

Following *McSparran*, the Fourth Circuit has held in Lester v. McFaddon, 4

Cir., 1969, 415 F.2d 1101, that "the appointment [of an out-of-state administrator] for the purposes of creating apparent diversity of citizenship [is] an improper manufacture of jurisdiction within the meaning of § 1359". At 1104. In doing so, the Court said:

> If he [the administrator] has no stake in the outcome, if he is a real party in interest only in the narrow procedural sense of those words and his appointment was secured solely for the purpose of creating diversity of citizenship, the apparent diversity is pretensive. The pretensive making of a party is improper within the meaning of § 1359. At 1106.

And noted

> It is a lack of a stake in the outcome coupled with the motive to bring into a federal court a local action normally triable only in a state court which is the common threat of the cases holding actions collusively or improperly brought. (Citing cases.) At 1106, n. 11.

Likewise, the Second Circuit, in O'Brien v. AVCO Corp., 2 Cir., 1969, 425 F.2d 1030, held that the appointment of an out-of-state administrator for the purpose of obtaining federal jurisdiction violates Section 1359, relying principally on the Supreme Court decision in Kramer v. Caribbean Mills, Inc., supra.

■ These cases make it clear that the District Court must be reversed in this case since it is admitted by the plaintiff-appellee that Bass' appointment, while proper in *form*, was totally lacking in *substance*, and done for the sole purpose of creating diversity of citizenship to invoke the jurisdiction of the District Court.

■■ We do not express any opinion as to the ambiguous situations potentially involving manufactured jurisdiction that may present themselves to the district courts of this circuit in the future. The question of whether a device

is so lacking in substance as to be improper and collusive under Section 1359 is a question of fact. McSparran v. Weist, supra, 402 F.2d at 876. Admittedly, any inquiry into the presence of a motive to create jurisdiction is fraught with difficulty.[5] The mechanically efficient rule of *Corabi* is gone, the equally efficient rule of the American Law Institute [6] yet remains only a proposal, and the courts are left to work the matter out under Caribbean Mills, Inc. v. Kramer, supra; *McSparran*, supra; and the other cases relied on here.[7]

The judgment of the District Court is hereby

Reversed.

## ON PETITION FOR REHEARING AND PETITION FOR REHEARING EN BANC

PER CURIAM:

The Petition for Rehearing is denied and no member of this panel nor Judge in regular active service on the Court having requested that the Court be polled on rehearing en banc, (Rule 35, Federal Rules of Appellate Procedure; Local Fifth Circuit Rule 12) the Petition for Rehearing En Banc is denied.

5. See Esposito v. Emery, 3 Cir., 1968, 402 F.2d 878, 880 (Biggs, J. dissenting in part and concurring in part) ; C. Wright, Law of Federal Courts, § 31, p. 102 (2nd ed., 1970) ; Note, "Manufactured Federal Diversity Jurisdiction and Section 1359", 69 Colum.L.Rev. 706 (1969).

6. The statute proposed by the ALI would test diversity by the citizenship of the decedent or the beneficiary instead of the citizenship of the fiduciary. American Law Institute, Study of the Division of Jurisdiction Between State and Federal Courts, Part I, Proposed § 1301(b) (4) (Official draft, 1965).

7. The limitation period for a death action under Texas law is two years. Texas Revised Civil Statutes, Article 5526(7). Since Morris' death occurred on January 29, 1969, the instant cause of action will not be barred by limitation until January 29, 1971, and, consequently,

there is ample time for the plaintiff to bring suit in state court. However, it would be inequitable to apply this decision to all presently pending diversity cases involving the possible manufacture of jurisdiction by the appointment of nonresident personal representatives if the institution of a new suit in state court would be barred by the applicable statute of limitation. We therefore adopt the approach of the Third Circuit limiting the retroactive application of this decision to situations where "(1) the plaintiff has 'ample time and opportunity' to bring an action in the state court, and (2) dismissal would not impose an 'unreasonable burden' on either party or on the administration of justice". Groh v. Brooks, 3 Cir., 1970, 421 F.2d 589, 592. See McSparran v. Weist, supra, 402 F. 2d at 876–877; Esposito v. Emery, 3 Cir., 1968, 402 F.2d 878.