Wilbur GREEN, Administrator of the Estate of Phillip Ray Walker, Deceased, Plaintiff-Appellee,

v.

William P. HALE, Defendant,

O. H. Thompson, Vaneta Thompson et al., Defendants-Appellants.

No. 28878.

United States Court of Appeals, Fifth Circuit.

Oct. 20, 1970.

Rehearing Denied Nov. 17, 1970.

Harold W. Ochsner, Ochsner, Nobles & Baughman, Amarillo, Tex., for appellants.

H. K. Myers, Jr., Hollis, Okl., for appellee.

Before TUTTLE, THORNBERRY and INGRAHAM, Circuit Judges.

THORNBERRY, Circuit Judge:

This medical malpractice case presents important questions of federal diversity jurisdiction as well as a few evidentiary points controlled by Texas law. Since we find in favor of the plaintiff-appellee on the jurisdictional issue, and further find no reversible error in the trial court's rulings, we Affirm.

## I.

### FACTS

Plaintiff-appellee brought this survival action[1] as administrator of the estate of Phillip Ray Walker, deceased infant, against the defendant-appellants,[2] Dr. O. H. Thompson, a licensed physician, and Vaneta Thompson and Mary Lou Martin, assistants to Dr. Thompson, for negligence in the diagnosis and treatment of the deceased. Plaintiff-appellee is a resident of Oklahoma,[3] and the three defendant-appellants are residents of Texas. The deceased was also a resident of Texas.

The plaintiff claimed that on Sunday, February 18, 1968, the parents of Phillip Ray Walker took their infant son to the defendants for treatment of the infant's illness.[4] Dr. Thompson diagnosed the illness as an ear infection, prescribed medication, and sent the baby home. On Monday morning the baby's condition became worse and the father took him to Dr. Thompson's clinic. The plaintiff claimed that on this day the parents, alarmed by the baby's condition, twice requested Dr. Thompson to admit the baby to a hospital, but Dr. Thompson replied that hospitalization was unnecessary. In addition, the plaintiff claimed that defendant Martin told the baby's mother that even if hospitalization were necessary, the hospital would not admit the baby unless the parents paid the full costs of hospital care in advance. The parents took the child home that evening,

February 19. On February 20, the baby turned blue and his breathing became labored. They called Dr. Thompson and again requested that the baby be admitted to a hospital, but Dr. Thompson told them to bring the baby to his clinic instead. When the child arrived at the clinic, he was not breathing. Defendant Martin attempted to resuscitate the child, and defendant Vaneta Thompson administered a dose of glucose, which plaintiff alleges was excessive. The child died at 10 a. m. of infectious hepatitis.

The case went to trial on these allegations, and the jury returned a verdict in plaintiff-appellee's favor in the amount of $5,858.58 actual damages against all three defendants jointly and severally, and $30,500 exemplary damages, $15,000 being assessed against defendants O. H. Thompson and Vaneta Thompson, respectively, and $500 against defendant Martin. The defendants moved for judgment n. o. v., and alternatively for a new trial. From the denial of these motions by the trial court, defendants prosecuted this appeal.

## II.

### JURISDICTION

The appellants' first point is that the trial court lacked jurisdiction of this case because the apparent diversity of citizenship between the parties[5] was "manufactured" by the appointment of an out-of-state administrator to prose-

---

1. The action was brought under Tex.Rev. Civ.Stat.Ann. art. 5525, known as the "survival statute," for medical and funeral expenses, pain and suffering, and exemplary damages.

2. The action was brought originally against Dr. William P. Hale, as well as against the appellants. Upon motion of defendant Hale for a directed verdict, however, the plaintiff's case against Dr. Hale was dismissed. Dr. Hale, therefore, is not a party to this appeal.

3. As one of their points on appeal, defendant-appellants assert that diversity of citizenship was lacking because "the record is silent as to the residence of Plaintiff,

Wilbur Green * * *." We have examined the record in light of this contention and discovered that (1) the trial court made an express finding that the plaintiff is a resident of Oklahoma, (2) that everything in the record supports this finding, and (3) that nothing refutes it.

4. The child's parents originally brought him to Dr. William Hale, supra note 2, on Tuesday, February 16. When the child's condition became worse on Sunday, they attempted to reach Dr. Hale and discovered that he was out of town. It was then that they called upon Dr. Thompson for medical advice.

5. See note 3 supra.

cute the suit for the estate of a resident minor. The appellants urge this court to adopt the recently announced rule of McSparran v. Weist, 3d Cir. 1968, 402 F. 2d 867, cert. denied sub nom., Fritzinger v. Weist, 395 U.S. 903, 89 S.Ct. 1739, 23 L.Ed.2d 217 (1970), in which the Third Circuit found diversity jurisdiction lacking because the out-of-state guardian in the suit had been selected to prosecute the claim solely to confer diversity jurisdiction on the federal court. The appointment of an out-of-state guardian for the sole purpose of creating federal jurisdiction, the Third Circuit held, offends 28 U.S.C. § 1359, which provides that "a district court shall not have jurisdiction of a civil action in which any party, by assignment or otherwise, has been improperly or collusively made or joined to invoke the jurisdiction of such court."

At the time the instant case was appealed, *McSparran* was not the rule in this Circuit. Subsequent to oral argument of the case, however, this Court in another case, Bass v. Texas Power & Light Company, 5th Cir. 1970, 432 F.2d 763, [dated August 19, 1970, modified on petition for rehearing, dated September 30, 1970], adopted the *McSparran* rule and applied it to the case of an out-of-state administrator.

We recognize that courts, including our own Court, have expressed concern in the past over applying the rule against "manufactured diversity" to cases involving out-of-state representatives because they feared that denying diversity

might entail a collateral attack on a state probate court decree.[6] This idea originated in a Supreme Court decision, Mecom v. Fitzsimmons Drilling Co., 284 U.S. 183, 189, 52 S.Ct. 84, 87, 76 L.Ed. 233, 238 (1931). To deny diversity on section 1359 grounds, it was thought, would be to. examine the motives behind the state court appointment and, discovering their purpose to be solely the creation of federal diversity jurisdiction, to conclude that fraud had been practiced upon the state court. The *Mecom* decision uses this argument in connection with an appointment to *defeat* diversity jurisdiction, but the Third Circuit subsequently extended the reasoning to out-of-state appointments intended to create diversity.[7] Corabi v. Auto Racing, Inc., 3d Cir. 1959, 264 F.2d 784; Jaffe v. Philadelphia & Western R. Co., 3d Cir. 1950, 180 F.2d 1010. The Third Circuit's extension of the *Mecom* rule met with criticism by the commentators,[8] and the *Corabi* decision itself was eroded by judicial distinctions and repudiations in other federal courts. In Caribbean Mills, Inc. v. Kramer, 5th Cir. 1968, 392 F.2d 387, aff'd, 394 U.S. 823, 89 S.Ct. 1487, 23 L.Ed.2d 9 (1969), this Court refused to extend the *Corabi* rule to the case of an assignment of a claim made only to create diversity jurisdiction. In doing so we rejected the *Corabi* court's restrictive reading of the words "improper and collusive" in section 1359,[9] which we said "virtually emasculated the statute." *Caribbean Mills, supra,* at 393. We distinguished *Corabi* otherwise be-

---

6. C. Wright, Law of Federal Courts, § 31 (2d ed. 1970).

7. For an explanation of the essential difference between manufacture to defeat and manufacture to create see text accompanying note 10, *infra.*

8. *See, e. g.,* Note, Manufactured Federal Diversity Jurisdiction and Section 1359, 69 Colum.L.Rev. 706 (1969).

9. In addition to its arguably unwarranted extension of the *Mecom* rule, the *Corabi* court had read section 1359 so narrowly that it was difficult to conceive of a case

in which the section would be applicable. The court had stated:

> The statute uses the phrase "improperly or collusively" to characterize the manufacture or joinder prohibited by it. * * * The term "collusion" indicates "A secret agreement and cooperation for a fraudulent or deceitful purpose; deceit; fraud." Webster's New International Dictionary, 2 ed. * * * Certainly to make use of state law to obtain diversity jurisdiction even though the object may be a high verdict in a federal court is not collusive within the ordinary meaning of that term.

264 F.2d at 788.

cause *Carribbean Mills* did not involve the problem of the state court appointment of a foreign representative. We stated that the result in *Corabi* "is supported by the rule that the decree of a state probate court naming an administrator cannot be collaterally attacked because of the purposes and motives of the parties when they practiced no fraud upon the court." *Caribbean Mills, supra,* at 393. We have no difficulty in repudiating that statement now. In the first place, it was mere dictum, and the Supreme Court further diminished its importance by declining to express an opinion on the question when it reviewed our decision. Kramer v. Caribbean Mills, Inc., 394 U.S. 823, 828, 89 S.Ct. 1487, 1490, 23 L.Ed.2d 9, 14, n. 9.[10] *See also* Lester v. McFaddon, 4th Cir. 1969, 415 F.2d 1101, 1104, in which Judge Haynsworth, in commenting on this problem, stated that "[s]ince the Supreme Court in *Kramer* reserved this question, it substantially eliminated the effect of earlier dicta."

In the second place, our statement was based upon what was at the time considered a well-settled rule and an interpretation that had been ascribed to *Mecom* by the Third Circuit. That rule now is no longer well-settled. The Third Circuit, which has been the leader all along in this area, has expressly repudiated and overruled *Corabi* and *Jaffe, supra.* In doing so, it not only explained why denying jurisdiction in the case of an out-of-state appointment solely to create diversity does not entail a collateral attack on the state court decree, it also distinguished *Mecom* on what we consider to be a very sound basis. We quote from the *McSparran* decision:

> We do not impugn the [state court] decree collaterally by refusing to recognize the citizenship of a straw guardian. Guardian he remains, but

since he is acting in the capacity of a straw party we refuse to recognize his citizenship for purposes of determining diversity jurisdiction.

\* \* \* \* \* \*

*Mecom* is immediately distinguishable from the present case because it involved an administrator, whereas here we deal with a guardian, who does not have title to the ward's right of action. But we believe § 1359 reaches executors and administrators as well as guardians and therefore put this difference aside. The fundamental distinction between *Mecom* and the present case is that there the collusion statute was not involved because the resignation of the administratrix and the appointment of her successor were acts done not to create federal jurisdiction but to prevent it from attaching.[11]

*See also* Lester v. McFaddon, *supra,* 415 F.2d at 1104.

█ We think that *McSparran* has laid to rest whatever concerns this Court heretofore may have had with the problem of appointments of out-of-state administrators. We therefore embrace the *Bass* decision, *supra,* as the new rule in this Circuit and begin our discussion of the peculiar jurisdictional problem of this case.

██ Even though our disposition of this case is controlled by *Bass,* there is at the outset a significant difference between that case and ours. In *Bass,* as in *McSparran,* the party seeking to invoke the jurisdiction of the federal court candidly admitted that the out-of-state administrator or guardian was appointed for the sole purpose of creating diversity of citizenship. In the instant case, however, the record is silent on the reasons for Wilbur Green's appointment. The trial court simply accepted

---

10. The Supreme Court stated that it was not "necessary to consider whether, in cases in which suit is required to be brought by an administrator or guardian, a motive to create diversity jurisdiction renders the appointment of an out-of-

state representative 'improper' or 'collusive'" 394 U.S. at 829, 89 S.Ct. at 1490, 23 L.Ed.2d at 14, n. 9.

11. *McSparran, supra,* 402 F.2d at 874, 875.

at face value the administrator's non-resident status and concluded that diversity jurisdiction existed. This course is perfectly understandable, since at the time there was no reason to inquire into the motives for the appointment. Now that this Circuit has adopted a rule against "manufactured diversity" in the case of out-of-state representatives, however, inquiry into the purpose of the appointment is essential.[12] Initially, the burden is upon the party invoking federal jurisdiction to prove facts that will sustain jurisdiction. McNutt v. General Motors Acceptance Corp., 298 U.S. 178, 56 S.Ct. 780, 80 L.Ed. 1135 (1936); C. Wright, Law of Federal Courts § 7 (2d ed. 1970).

■■ If the initiating party's assertion of federal jurisdiction is challenged by a motion to dismiss and he fails to bring forth any factual material to support his claim of jurisdiction, then dismissal may properly be granted against him. Before dismissal is granted, however, it should be clear from the record that the party has had an opportunity to present facts in support of his positon that diversity is real. If the party does present evidence supporting the selection of an out-of-state representative, and the district court nevertheless finds diversity lacking, then the court's findings and the reasons underlying them should be clearly set forth in the record to inform the parties and facilitate review. Groh v. Brooks, 3d Cir. 1970, 421 F.2d 589, 594.

■■ Ordinarily in a case like this one, in which the record is silent on the reasons for an out-of-state appointment, we would remand for findings of fact on that question. On remand a court should consider, among other things, such factors as the relationship of the representative to the party represented; the scope of the representative's powers and duties; any special capacity or experience which the representative may possess with respect to the purpose of his appointment; whether there exists a nondiverse individual who might more normally be expected to represent the interests at stake; whether those seeking the appointment of the representative express any particular reasons for selecting an out-of-state person; and whether, apart from the appointment of an out-of-state representative, the suit is one wholly local in nature.

■ Although we decide that, as a general rule, a record such as the one before us requires a remand, in the instant case remand would be futile. For even if the trial court were to discover on remand that diversity jurisdiction indeed has been "manufactured," we have concluded that dismissal under the circumstances of this case would be an unreasonable burden to place on the parties and the administration of justice.

At the time the instant case was commenced, there was justifiable reliance by all parties and by the trial court on what was then a long line of consistent holdings in support of the *Corabi* rule that state court appointments were immune from collateral attack. The Third Circuit had only just decided *McSparran* two weeks prior to the date the instant suit was filed; and the *Corabi* rule with respect to administrators had just been cited with approval by this Circuit only a few months before the filing of the complaint. *Caribbean, Mills, supra,* 392 F.2d at 393. No one even thought of raising the question of manufactured diversity until the trial was over and judgment had been entered.

Pointing to his reasonable reliance on the previous law of this Circuit, the plaintiff-appellee in his brief and on oral argument urges us not to dismiss his suit because the Texas Statute of Limita-

---

12. A corollary to the "collateral attack" theory was the notion that inquiry into the motive underlying an out-of-state appointment was impermissible. *E. g.*, Black & White Taxicab & Transfer Co. v. Brown & Yellow Taxicab & Transfer Co., 276 U.S. 518, 524, 48 S.Ct. 404, 72 L.Ed. 681 (1928); *Mecom, supra.* This idea has now been discredited by the *McSparran* decision, as well as by our own *Bass* decision. See also Lester v. McFaddon, 4th Cir. 1969, 415 F.2d 1101, 1104–1105.

tions had already run on his action. Tex. Rev.Civ.Stat.Ann. art. 5526(7). While it is true that the state limitation period has expired, no prejudice is caused thereby to the plaintiff in so far as the availability of a state court remedy is concerned because Texas also has a tolling statute which has been held to apply when the dismissal on jurisdictional grounds is by a federal court. Burford v. Sun Oil Co., 186 S.W.2d 306 (Tex.Civ.App.—Austin 1944, writ ref'd w.m.) construing Tex.Rev.Civ.Stat.Ann. art. 5539a.[13] We nevertheless decline to apply *Bass* retrospectively to the instant case because to do so would require a wholly unnecessary and unjustifiable retrial in state court and would place an unreasonable burden upon the plaintiff-appellee and upon the already strained machinery of justice.

▮ We realize that the Supreme Court refused to give prospective application to its *Carribbean Mills* decision because of the availability of the very same tolling statute to the appellants in that case. Kramer v. Caribbean Mills, 394 U.S. at 830, 89 S.Ct. at 1491, 23 L.Ed.2d at 15, n. 12. That the Supreme Court declined to rule prospectively in

*Carribbean Mills,* of course, does not preclude this Court from applying *Bass* with limited retroactivity. For nothing in the Constitution prevents use of the technique of prospective limitation or prospective overruling. Great N. Ry. Co. v. Sunburst Oil & Ref. Co., 287 U.S. 358, 53 S.Ct. 145, 77 L.Ed. 360 (1932). That the technique may be used in connection with an arguably jurisdictional pronouncement having constitutional overtones [14] makes no difference because the Supreme Court has frequently made use of prospective overruling in the adjudication of constitutional rights. Lester v. McFaddon, *supra,* at 1102. *See, e. g.,* Johnson v. New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882 (1966); Linkletter v. Walker, 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965).[15]

Another reason that we have no difficulty in applying *Bass* prospectively is that *Bass* itself is expressly so limited.[16] Judge Morgan, speaking for the Court in that decision, foresaw that just such an occurrence as we have here might arise from the promulgation of a new doctrine on diversity jurisdiction and expressly restricted *Bass* to situations in which "(1) the plaintiff has 'ample time

13. Art. 5539a provides as follows:
When an action shall be dismissed in any way, or a judgment therein shall be set aside or annulled in a direct proceeding, because of a want of jurisdiction of the Trial Court in which such action shall have been filed, and within sixty (60) days after such dismissal or other disposition becomes final, such action shall be commenced in a Court of Proper Jurisdiction, the period between the date of first filing and that of commencement in the second Court shall not be counted as a part of the period of limitation unless the opposite party shall in abatement show the first filing to have been in intentional disregard of jurisdiction.

14. Judge Haynsworth has suggested that section 1359 may not be a jurisdictional statute. In his *McFaddon* decision, he stated the following:
The statute [§ 1359] speaks in jurisdictional terms which pose some conceptual difficulty in the way of affirmance of a judgment in a case to which § 1359 is applicable. The case, however,

is within the general jurisdiction conferred by § 1332, and § 1359 may properly be regarded as an authorization and directive to control and limit abuses in the invocation of conferred jurisdiction. Even if it be jurisdictional, diversity of citizenship is but a quasi-jurisdictional fact. A judgment based upon an erroneous finding of diversity is not void and is immune from collateral attack.
Lester v. McFaddon, 415 F.2d at 1107.

15. Moreover, considerations of economy in judicial administration were important in these decisions. *E. g.* Johnson v. New Jersey, 384 U.S. at 731, 86 S.Ct. at 1780, 16 L.Ed.2d at 891.

16. There was no need to use the technique of limited retroactivity in *Bass* itself because there was no limitations problem, and the case had not gone to trial, but rather had come to the court on leave to appeal from the district court's interlocutory order pursuant to 28 U.S.C. § 1292 (b). *See also* O'Brien v. Avco Corp., 2d Cir. 1969, 425 F.2d 1030, 1032, 1036 & n.5.

and opportunity' to bring an action in state court, and (2) dismissal would not impose an 'unreasonable burden' on either party or on the administration of justice." *Bass, supra,* 432 F.2d at 767, n. 7.

## III.

### POINTS OF ERROR IN THE TRIAL

 Since we have ruled favorably to the plaintiff-appellee on the jurisdictional issue, we must now consider the defendant-appellants' points of error raised with respect to the trial judge's rulings. Appellants' first point is that the trial court erred in overruling their motion that the natural parents of the deceased were barred by the Texas Dead Man's Statute [17] from testifying about the pain and suffering of the deceased. It appears from the record, however, that the defendants themselves took depositions of the very witnesses whose testimony they sought to exclude. The law in Texas is well settled on this point. The Texas Supreme Court has held that "when the testimony of a witness, who would otherwise be incompetent to testify regarding the matters covered by art. 3716, is taken by deposition and the 'opposite party' initiates an inquiry relative to a transaction with the decedent, the statute is waived and the witness may testify fully regarding such transaction." Chandler v. Welborn, 156 Tex. 312, 294 S.W.2d 801, 809 (1956). We therefore find no error in the admission of the testimony in question.

 The appellants next urge two "no evidence" points as additional grounds for reversal. First, they argue that the trial court erred in permitting the jury to consider the element of exemplary damages when there was no evidence that any of the defendants acted in an oppressive, grossly negligent or fraudulent manner. Secondly, they assert that the trial court erred in permitting the jury to consider the case because there was no evidence of the medical standards applicable to the defendants. We view these points as simply an attempt by the appellants to argue their evidence all over again in the appellate court. We have examined the record in this case and found evidence to support both submissions to the jury. First, there was evidence that the defendants concealed from the infant's parents information that Dr. Thompson was not authorized to admit and treat persons in the local hospital at a time that was from all appearances critical to the well-being of the child. We think this would support an inference of fraudulent conduct on the part of the defendants and a jury finding of exemplary damages. Morgan v. Arnold, 441 S.W.2d 897 (Tex.Civ.App.—Dallas 1969, writ ref'd n. r. e.). Moreover, there was testimony by other doctors that the child's conditions required hospitalization. Clearly, this testimony of what other doctors would do is the type of evidence of medical standards that a jury may rely upon in evaluating a defendant's conduct.

Finally, the appellants argue that the trial court erred as a matter of law in submitting this cause to the jury with instructions that Dr. Thompson and his employees Mrs. Thompson and Miss Martin were under a duty to advise the baby's parents that the doctor was not a member of the local hospital staff.

 To support this contention, the appellants refer us to the qualifications imposed by the Texas State Legislature for individuals to practice medicine. The appellants point out that there is no statutory requirement that one be a member of a hospital staff in order to practice medicine in Texas. We fail to

17. Tex.Rev.Civ.Stat.Ann. art. 3716 provides in pertinent part as follows:

In actions by or against executors, administrators, or guardians, in which judgment may be rendered for or against them as such, neither party shall be allowed to testify against the others as to any transaction with, or statement by, the testator, intestate or ward, unless called to testify thereto by the opposite party; * * *

see the relevance of this argument. The plaintiff did not argue that it is malpractice to practice medicine without being a member of the hospital staff. He argued that it is malpractice for a doctor to conceal from a patient his inability to secure admission to a hospital, when hospitalization is important to the well-being of the patient. The trial judge, in fact, instructed the jury that they could not find against the defendants unless they found that the failure to notify the parents was a proximate cause of the child's pain and suffering. The jury found against the defendants on this point and there was evidence to support the finding.

We Affirm.