**THE AETNA CASUALTY & SURETY COMPANY, Plaintiff,**

v.

**PENDLETON DETECTIVES OF MISSISSIPPI, INC., Defendant.**

**Civil Action No. 3:96CV876(L)(N).**

United States District Court, S.D. Mississippi, Jackson Division.

April 22, 1997.

rights. *See also supra* note 28 regarding MDAH    administrative procedures.

**417**

David W. Case, Ronald A. Yarbrough, Off & Purdy, Jackson, MS, for Plaintiff.

J. Tucker Mitchell, James R. Moore, Jr., Copeland, Cook, Taylor & Bush, Jackson, MS, for Defendant.

### MEMORANDUM OPINION AND ORDER

TOM S. LEE, Chief Judge.

This cause is before the court on the motion of defendant Pendleton Detectives of Mississippi, Inc. (Pendleton) to dismiss for lack of diversity jurisdiction or, alternatively, to join real party in interest and to remand. Plaintiff Aetna Casualty & Surety Company (Aetna), a Connecticut corporation, opposes the motion, and the court, having considered the memoranda and submissions of the parties, now concludes that the motion is not well taken and is due to be denied.

Aetna, as the subrogee and assignee of its insured Merchants Corporation, has filed suit in this court against Pendleton. Aetna alleges claims for broach of contract and negligence related to thefts which occurred at a Merchants warehouse at a time when Pendleton was under a contract to provide security services to Merchants. Pendleton seeks to have the action dismissed urging that because Merchants, a real party in interest pursuant to Rule 17(a) of the Federal Rules of Civil Procedure, is not a party to this suit, the court thus lacks diversity jurisdiction under 28 U.S.C. § 1332. Alternatively, Pendleton moves both to join Merchants as a real party in interest under Rule 17(a) and to remand the case to Hinds County Circuit Court.[1] For the reasons set forth below, the court concludes that diversity jurisdiction is present and that therefore, the motion to dismiss or to join Merchants as a real party in interest is not well taken.

In 1993 Merchants contracted with Pendleton for Pendleton to provide security services to protect Merchants' property and interests at its Jackson, Mississippi distribution warehouse. In September 1994, Aetna issued to Merchants a commercial crime policy which was in force in January of 1996 when Merchants submitted proofs of loss to Aetna substantiating losses by theft in the amount of $430,266.68. According to the complaint, the thefts in question occurred during times that Pendleton employees were supposedly guarding Merchants' property and premises.

After an investigation, Aetna paid Merchants $250,000, a sum which it maintained represented the full extent of its liability to Merchants under the terms of the policy. Merchants, though, claimed that it was entitled to payment beyond $250,000. Ultimately, Merchants and Aetna settled their dispute and entered into a settlement agreement. Significant to the case at bar, the "Release, Assignment and Agreement" between Merchants and Aetna recited that for

$35,000 and in affirmation of Aetna's subrogation rights, Merchants assigns to Aetna, absolutely and irrevocably, all of Merchants' rights against Pendleton arising of or relating in any way to Pendleton's breach of contract and/or negligence ("the Pendleton claim") with respect to the losses sustained by Merchants as described more fully in the Proofs of Loss (Exhibits A and B).

The document also indicated Merchants' understanding that the decision of whether to prosecute, settle, compromise or abandon the Pendleton claim was within Aetna's sole discretion.[2] Aetna, in consideration of Mer-

---

1. As this action was originally filed in this court rather than state court, the appropriate inquiry is whether the case should be dismissed, not whether it should be remanded. The court is of the opinion that it has no authority to remand a case which was not removed, and will not consider this aspect of the motion.

2. Paragraph 3 of the "Release, Assignment and Agreement" further provides that Merchants understood and agreed that "Aetna is not undertaking a fiduciary relationship with Merchants insofar as the Pendleton claim [is concerned] and that Merchants is not a third-party beneficiary of

chants' entering into the settlement, agreed to pay Merchants one-third of any amount recovered from Pendleton through negotiation, litigation or settlement.[3] Finally, Merchants "in further consideration of Aetna entering into [the] Agreement" agreed to cooperate in Aetna's prosecution of the Pendleton claim.

> Rule 17(a) of the Federal Rules of Civil Procedure provides in pertinent part that [e]very action shall be prosecuted in the name of the real party in interest.... No action shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed after objection for ratification of commencement of the action by, or joinder or substitution of, the real party in interest; and such ratification, joinder, or substitution shall have the same effect as if the action has been commenced in the name of the real party in interest.

An inquiry under Rule 17(a) requires the reviewing court to determine "whether the plaintiff[ ] in [an] action [is] indeed the real part[y] in interest—i.e., the party who, by the [governing] substantive law, has the right to be enforced...." *Lubbock Feed Lots, Inc. v. Iowa Beef Processors,* 630 F.2d 250, 256–57 (5th Cir.1980) (finding that substantive law of Texas granted plaintiffs right to sue in their own name and they were thus real parties in interest). The purpose of the rule is to protect a defendant from multiple suits and multiple damage awards arising from the same claim. *See Hefley v. Jones,* 687 F.2d 1383, 1388 (10th Cir.1982).

■ In support of its motion, Pendleton first argues that "under both federal and Mississippi law, an insurer who pays only a partial interest on a claim submitted by an insured is deemed only partially subrogated to the rights of that insured," and for this reason, "both the insured and insurer remain real parties in interest." *See United States v. Aetna Casualty & Surety Co.,* 338 U.S.

366, 381, 70 S.Ct. 207, 215, 94 L. Ed 171 (1949) (stating that if an insurer "has paid only part of the loss, both the insured and insurer ... have substantive rights against the tortfeasor which qualify them as real parties in interest"); *Alexander v. Elzie,* 621 So.2d 909, 912 (Miss.1992) (stating that both an insurer and insured are real parties in interest where insurer is partially subrogated to rights of insured). From this, defendant reasons that Merchants, as a real party in interest pursuant to Rule 17(a), should have been added as a party plaintiff and because it was not, this court lacks diversity jurisdiction.[4]

Pendleton's argument is seriously flawed. As previously indicated, the inquiry under Rule 17(a) is whether the plaintiff has a substantive right to assert the claims pending before the court. *See Lubbock Feed Lots, Inc.,* 630 F.2d at 256–57. In the instant case, Pendleton, while disputing the validity of Merchants' assignment, is at least willing to concede that as a partial subrogee, Aetna is a real party in interest. Accordingly, even if Merchants had not assigned its rights to the Pendleton claim to Aetna, the court would conclude that it had diversity jurisdiction over the dispute between Aetna, a Connecticut corporation and partial subrogee, and Pendleton, a Mississippi corporation.[5]

■ By taking the position that the court lacks diversity jurisdiction because Merchants is not a party to this action, it would seem that Pendleton is actually complaining that Merchants is an indispensable party pursuant to Rule 19 because Merchants is a real party in interest. *See U–Haul Int'l, Inc. v. Jartran, Inc.,* 793 F.2d 1034, 1038 (9th Cir.1986) (stating that Rule 17 "governs only the right of (plaintiff) to bring suit," while Rule 19 "tells [court] whether appropriate parties are before the court," and that "[b]oth rules must be satisfied before case may proceed"). Having con-

---

the proceeds or of any rights with respect to the Pendleton claim...."

**3.** According to the agreement, payment of any amount recovered must be made within 30 days of receipt and after Aetna's attorneys' fees and expenses are deducted from any recovery.

**4.** Defendant moves the court alternatively to join Merchants as a party plaintiff. Defendant points out that this will then necessitate dismissal because diversity jurisdiction will no longer exist.

**5.** This analysis, of course, assumes that the required jurisdictional amount is present.

sidered Pendleton's, Merchants' and Aetna's respective interests in this case, the court concludes that Merchants is not a real party in interest. The settlement agreement between Merchants and Aetna expressly provides that Aetna now holds the exclusive right to assert (or not to assert) both the tort and breach of contract claims against Pendleton. Such an assignment of rights is valid under Mississippi law, *see J.H. Leavenworth & Son, Inc. v. Hunter,* 150 Miss. 245, 116 So. 593, 596 (1928) (cause of action for breach of contract or for injury to property or person is fully assignable in Mississippi), and accordingly, on this basis, Merchants may no longer be deemed a real party in interest in accordance with Rule 17(a).[6]

■ However, "the fact that someone is not a real party in interest is not [necessarily] conclusive on the question of the propriety of his joinder." *See Wright and Miller,* § 1543 p. 340 2d ed. Under Rule 19 of the Federal Rules of Civil Procedure, to determine if a party's joinder is necessary to the action, the court must first determine whether complete relief can be afforded in the person's absence and whether

> the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple or otherwise inconsistent obligations by reason of the claimed interest.

If either question is answered in the affirmative and that person is not subject to service of process or his presence would deprive the court of jurisdiction, the court must then conduct an inquiry under Rule 19(b) to determine whether the absent party should be regarded as indispensable. If a party is determined to be indispensable, the case must be dismissed.

In this case, Aetna possesses the sole right to prosecute the claims against Merchants and thus, complete relief may be accorded

without the inclusion of Merchants as a party plaintiff. Likewise, as Merchants has assigned any and all interest in the Pendleton claims to Aetna, there is no risk that its ability to protect that interest will be impeded. Finally, due to the assignment, Pendleton is not subject to a substantial risk of multiple liability.

■ In its second argument in support of its motion, Pendleton attacks the validity of the assignment entered by Merchants and Aetna, alleging the agreement is merely an attempt to collusively manufacture federal diversity jurisdiction. On this basis, Pendleton takes the position that the court is without jurisdiction pursuant to 28 U.S.C. § 1359. Section 1359 provides that "[a] district court shall not have jurisdiction of a civil action in which any party, by assignment or otherwise, has been improperly or collusively made or joined to invoke jurisdiction of such court." The question of whether an assignment "is so lacking in substance as to be improper and collusive under Section 1359 is a question of fact" to be decided by the court. *Bass v. Texas Power & Light Co.,* 432 F.2d 763, 766–67 (5th Cir.1970), *cert. denied,* 401 U.S. 975, 91 S.Ct. 1194, 28 L.Ed.2d 324 (1971).

The court in *Bass* held that although the appointment of an out-of-state administrator was proper in form, it "was totally lacking in substance, and [was] done for the sole purpose of creating diversity jurisdiction," and thus, warranted dismissal under § 1359. In reaching its decision, the court focused on the out-of-state administrator's stake in the outcome of the litigation, stating that "[w]hile the statute does not ban the appointment of nonresident fiduciaries, the artificial selection of a straw representative who has no duty or function except to offer the use of his citizenship to create diversity is a violation of its provisions." *Id.* (quoting *McSparran v. Weist,* 402 F.2d 867, 873 (3rd Cir.1968), *cert. denied,* 395 U.S. 903, 89 S.Ct. 1739, 23 L.Ed.2d 217 (1969)).

In *Kramer v. Caribbean Mills, Inc.,* 394 U.S. 823, 89 S.Ct. 1487, 23 L.Ed.2d 9 (1969),

---

**6.** Given that Merchants has assigned to Aetna all rights to pursue the claim against Pendleton, the ill sought to be avoided by Rule 17(a)—subjecting

a defendant to multiple suits and multiple damages on a single claim—is not present.

the Supreme Court affirmed the Fifth Circuit's decision that the district court lacked jurisdiction under § 1359. In *Kramer*, a foreign corporation assigned to a United States citizen its interest in a contract with another foreign corporation. *Id.* at 824, 89 S.Ct. at 1488. As consideration for the assignment, the citizen, an attorney with no prior connection to the contract, paid the foreign corporation one dollar. *Id.* In a separate agreement executed the same day, the attorney "promised to pay back to the [assigning corporation] 95% of any net recovery on the assigned cause of action...." *Id.* The attorney then brought suit in a district court alleging diversity of citizenship pursuant to § 1332. *Id.* The Court, focusing on the fact that the attorney had no real stake in the outcome, stated,

> When the assignment to Kramer is considered together with his total lack of previous connection with the matter and his simultaneous reassignment of a 95% interest back to Panama, there can be little doubt that the assignment was for the purposes of collection, with Kramer to retain 5% of the net proceeds "for the use of his name and his trouble in collecting."

*Id.* at 827–28, 89 S.Ct. at 1489–90. The Court then concluded that its decision was supported not only by precedent but also by the very purpose of the statute. *Id.* at 828, 89 S.Ct. at 1490. In this vein, the Court stated that

> [i]f federal jurisdiction could be created by assignments of this kind, which are easy to arrange and involve few disadvantages for the assignor, then a vast quantity of ordinary contract and tort litigation could be channeled into federal courts at the will of one of the parties.

*Id.*

In the instant case, Aetna is by no means a straw representative, with no prior relationship to the action, chosen simply to effectuate diversity jurisdiction. *See Bass*, 432 F.2d at 766–67, and *Kramer*, 394 U.S. at 827–28, 89 S.Ct. at 1489–90. To the contrary, as defendant concedes, prior to the assignment, Aetna, as the partial subrogee in the amount of

$250,000, had a significant interest in the action.[7] Moreover, unlike the administrator and assignee in *Bass* and *Kramer*, Aetna, though agreeing to pay Merchants one-third of any amount recovered, has a sizable stake in any recovery from Pendleton. Finally, the agreement recites that Aetna gave $35,000 to Merchants in consideration for the assignment of its rights, an amount which indicates to the court that the agreement was not a mere sham used to create jurisdiction. Accordingly, the court concludes that it has subject matter jurisdiction pursuant to 28 U.S.C. § 1332, and therefore, defendant's motion to dismiss for lack of subject matter jurisdiction should be denied.

Based on the foregoing, it is ordered that defendant's motion to dismiss for lack of diversity jurisdiction or, alternatively, motion to join a necessary party and motion to remand, is denied.

---

7. As the court has previously indicated, had Aetna, as a partial subrogee, chosen to bring suit against Merchants, this court would have had jurisdiction pursuant to § 1332.