**Ellen BUTLER, Guardian of the Estate of Michael J. Ware, a Minor, and James Ware and Glorida Goddard, Appellants,**

v.

**Katherine P. COLFELT.**

**No. 19180.**

United States Court of Appeals, Third Circuit.

Argued Feb. 17, 1971.

Decided March 23, 1971.

Milford J. Meyer, Meyer, Lasch, Hankin & Poul, Philadelphia, Pa., for appellants.

Joseph V. Pinto, White & Williams, Philadelphia Pa., for appellee.

Before FREEDMAN,* SEITZ and ROSENN, Circuit Judges.

## OPINION OF THE COURT

PER CURIAM:

The district judge, on defendant's motion, dismissed this action for lack of jurisdiction on the ground that diversity was "manufactured."

Michael J. Ware, a minor, was injured on December 2, 1966. In 1967 the present action was instituted by Ellon Butler, who had been appointed guardian of the minor's estate by the Orphans' Court of Chester County, Pennsylvania, and by his parents, James Ware and Gloria Goddard. The parents sued for their expenses in the care and treatment of the minor's injuries and for their deprivation of his earnings during minority.

The accident occurred in Pennsylvania. When the action was brought the minor and his parents, as well as the defendant, were citizens and residents of Pennsylvania. On October 2, 1968, while the action was pending, we handed down our decision in McSparran v. Weist, 402 F.2d 867 (3 Cir. 1968), cert. denied sub. nom. Fritzinger v. Weist, 395 U.S. 903, 89 S.Ct. 1739, 23 L.Ed.2d 217 (1969), and the companion case of Esposito v. Emery, 402 F.2d 878 (3 Cir. 1968). Plaintiffs then filed a protective action in the Common Pleas Court in Chester County, Pennsylvania, which is still pending. Some time later the defendant filed the present motion to dismiss.

In the depositions taken in the district court on the motion to dismiss, the mother and the guardian testified why neither of the parents had sued on the minor's behalf and instead a resident of New Jersey was appointed guardian of his estate, which made possible a claim of diversity jurisdiction in the federal court.

The explanation given in this evidence is that a lack of confidence existed between the parents, aggravated by the father's resentment of his ex-wife's remarriage. As a result, the parents would not agree to the appointment of either one to act on behalf of their son and therefore decided on the appointment of the wife's sister, Mrs. Butler, as guardian of the boy. Both parents had ties to New Jersey; their own parents were from New Jersey, the father still had a half-brother living in New Jersey and the mother's sister, Mrs. Butler, was, of course, a resident of New Jersey. Curiously enough, at the time the depositions were taken the mother had moved from Pennsylvania to New Jersey and was working there, and Mrs. Butler had moved from New Jersey to Buffalo, New York.

Mrs. Butler, who is 28 years of age, was unfamiliar with the duties of a guardian and had never before acted in that capacity. She has no experience in investments or financial matters and because of their geographical separation she has never taken any special interest in the minor nor has she given him any special care.

The district court in a full opinion canvassed the various factors involved. 313 F.Supp. 527. It found as a fact that the estrangement of the parents did not sufficiently explain the choice of Mrs. Butler as guardian and found that diversity was "artificially created."

It has been ably argued to us that the finding of the district court should be set aside because the parents' explanation of their selection of Mrs. Butler adequately discloses some other purpose than the "manufacture" of diversity jurisdiction, or that at the least it shows that the appointment was not solely or primarily for the purpose of creating diversity.

The district court did not expressly specify that the "sole" or even "primary" purpose of the appointment of the foreign guardian was to create or "manufacture" diversity jurisdiction. We

---

* Judge Freedman participated in the consideration and disposition of this case, but died before it was filed.

read its opinion, however, as excluding from the real purpose of the appointment the explanation proffered for the plaintiff. In the context of the district court's opinion this is equivalent to a specific statement that the sole or primary purpose of the appointment was to create diversity.

■ The explanation which the plaintiff has tendered is on its face a difficult one to accept. It must be rejected for two additional considerations. One is that the father and mother joined in the action as plaintiffs in their own right, despite their alleged inability to agree that either or both of them might act as the personal representatives of their minor child in the same action. It pushes credulity too far to accept the contention that distrustful ex-spouses who join in a count for their damages resulting from their son's injury could not agree to join in the count for the damages which the son himself sustained from the same injury. The second consideration is that the burden of demonstrating the right to bring this action in the federal courts on the basis of genuine diversity rests upon the plaintiff.[1] These factors are decisive. The plaintiff's explanation inherently lacks the weight required to discharge her burden of proof.

■ Thus, on an independent review of the dispositions we arrive at the same conclusion as the district court. We need not, therefore, pursue to its ultimate refinement the interesting distinction in the application of the "clearly erroneous" doctrine under Rule 52(a) of the Federal Rules of Civil Procedure[2] between cases where the fact-finder deals with demeanor evidence and those involving only documentary or recorded evidence,[3] or whether the findings of the district court are entitled, at the least, to some consideration.[4]

■ Since the action by the guardian of the minor must be dismissed for lack of diversity jurisdiction, the pendant claim by the parents, who in their own right had no diverse citizenship from the defendant, must also fall.

■ In announcing the *McSparran* rule we cautioned that it should be applied retrospectively only if no harm is occasioned to those who had brought an earlier action in reliance on the rule which then prevailed. In this case the plaintiffs have the protection of the state court action now pending in the Court of Common Pleas in Chester County and the dismissal of their action here will not preclude their going forward with that suit.

The judgment of the district court will be affirmed.

---

1. McSparran v. Weist, supra, at 875–876; Groh v. Brooks, 421 F.2d 589, 594, n. 18 (3 Cir. 1970); Joyce v. Seigel, 429 F.2d 128, 129 (3 Cir. 1970); Hoffman v. Lenyo, 433 F.2d 657, 658 (3 Cir. 1970).

2. Rule 52(a) of the Federal Rules of Civil Procedure provides: "Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses."

3. It has been held that the "clearly erroneous" test does not apply to cases where only documentary evidence was before the court. Orvis v. Higgins, 180 F.2d 537, 538–539 (2 Cir.), cert. denied 340 U.S. 810, 71 S.Ct. 37, 95 L.Ed. 595 (1950);

Carter Oil Co. v. McQuigg, 112 F.2d 275, 279 (7 Cir. 1940); Fleming v. Palmer, 123 F.2d 749, 751 (1 Cir. 1941), cert. denied Caribbean Embroidery Co-op. v. Fleming, 316 U.S. 662, 62 S.Ct. 942, 86 L.Ed. 1739 (1942). Contra: Lundgren v. Freeman, 307 F.2d 104, 113–115 (9 Cir. 1962). See generally, Commissioner of Internal Revenue v. Duberstein, 363 U.S. 278, 289–292, 80 S.Ct. 1190, 4 L.Ed. 2d 1218 (1960); 5 Moore, Federal Practice, ¶ 52.04, (2d ed. 1969).

4. Banister v. Solomon, 126 F.2d 740, 741–742 (2 Cir. 1942), L. Hand, J.; Cf. Kuhn v. Princess Lida of Thurn & Taxis, 119 F.2d 704, 705–706 (3 Cir. 1941).