William A. PISTONE, Admr. for the Ests. of Gerald A. Miller, Sr., Dec'd, Esther E. Miller, Dec'd and Linda M. Miller, Dec'd,

v.

George ROMANO & Fiore Romano t/a Romano Brothers et al.

Civ. A. No. 71-2122.

United States District Court, E. D. Pennsylvania.

Oct. 3, 1972.

James D. McCrudden, Philadelphia, Pa., for plaintiffs.

Jonathan Wheeler, Robert H. Messerman, Philadelphia, Pa., for defendants.

OPINION

LUONGO, District Judge.

This is a suit in which jurisdiction is founded on diversity of citizenship. Defendants have moved to dismiss the ac-

tion on the ground that proper diversity of citizenship is lacking.

Gerald Miller, Sr., his wife Esther, and one of their four children, Linda, were killed in an automobile accident on September 5, 1970. The Millers were all citizens and residents of Pennsylvania as were all the defendants. William Pistone, a Philadelphia attorney who lives in New Jersey, was appointed administrator of the estates of the three deceased Millers and suit was instituted in his name on behalf of the estates. The question raised by defendants' motion to dismiss is whether diversity of citizenship was "manufactured" for the purpose of invoking the jurisdiction of this court. McSparran v. Weist, 402 F.2d 867 (3d Cir. 1968), cert. denied sub nom. Fritzinger v. Weist, 395 U.S. 903, 89 S.Ct. 1739, 23 L.Ed.2d 217 (1969).

The pertinent facts as they appear in the record (including pleadings, deposition and affidavit of Gerald Miller, Jr., and affidavit of James D. McCrudden, Esquire, attorney for plaintiff) are:

The decedents were survived by three Miller children, Gerald Jr., 22 years of age, Edward, 19, and Mariann, 11. At the time of the accident Gerald Jr. was in the United States Navy stationed at San Diego, California. Within approximately 2½ months after the accident, Gerald Jr. received a hardship discharge from the Navy and returned to the family home in Philadelphia. Gerald Miller, Sr., was also survived by five brothers and two sisters. One of the sisters, Alene Murray, with her husband Frank, moved into the Miller home sometime in October 1970 to serve the role of foster parents to the children. Another sister, Carrie Hecker, lived in Philadelphia and the five brothers, Edward, Merle, Lawrence, Kenneth and Keith, all lived in Philadelphia or in the nearby suburbs. One of the brothers, Edward, was in the real estate business and another, Merle,

operated a moving business and had employed Gerald Sr. on a part-time basis prior to the latter's death.

McSparran v. Weist, *supra*, laid down the rule for this Circuit that 28 U.S.C. § 1359 [1] bars access to the federal courts for a suit brought by a diverse personal representative whose appointment as such is for the purpose of creating diversity jurisdiction. That case went on further to reiterate that it is the plaintiff's burden to prove facts supporting diversity jurisdiction. The factors to be considered in determining whether diversity has been artificially created were later enumerated in Groh v. Brooks, 421 F.2d 589 (3d Cir. 1970), at 595:

". . . the identity of the representative and his relationship to the party represented; the scope of the representative's powers and duties; any special capacity or experience which the representative may possess with respect to the purpose of his appointment; whether there exists a non-diverse party, such as a parent in a suit for injuries to a child, who might more normally be expected to represent the interests involved; whether those seeking the appointment of the representative express any particular reasons for selecting an out-of-state person; and whether, apart from the appointment of an out-of-state representative, the suit is wholly local in nature."

Application of the factors set forth in *Groh* leads quite clearly to the conclusion that the appointment of the out-of-state representative in this case was for the purpose of "manufacturing" diversity. The motion to dismiss will, therefore, be granted.[2]

Applying one of the tests, there were several non-diverse persons "who might more normally be expected to represent the interest involved." These included Gerald Miller, Jr., and at least two of the brothers of Gerald Miller, Sr., Ed-

[1]. "§ 1359. Parties collusively joined or made

A district court shall not have jurisdiction of a civil action in which any party, by assignment or otherwise, has been improperly or collusively made or joined to invoke the jurisdiction of such court."

[2]. An action has been timely filed in state court so that the dismissal of this suit will not leave plaintiff without remedy.

ward and Merle. Other possibilities were the sister, Alene and, more remotely, the remaining sister and three brothers. The explanations offered for the failure to appoint any of the relatives were quite involved, but unconvincing. For example, as to Gerald Jr., the explanation is offered that it would have been inconvenient for him to serve because he was in the service in San Diego, California, but within 2½ months of the date of the accident he was out of the service and back in the family home. The further explanation, that he did not feel qualified to handle financial matters, is not convincing in light of the limited role played by administrators in personal injury cases. As to Merle Miller, it was alleged that he would have been willing and able to serve as administrator, but that since he had been appointed guardian for the two Miller children, "it was considered poor practice"[3] to have him serve also as administrator. But curiously enough, although Merle was appointed guardian for the two minor children, Alene Murray and her husband were actually living in the home and serving as guardians of the persons of the minor children.

As to the other brothers and sisters, the explanations were advanced that they were either unwilling, or not sufficiently expert in estate affairs to serve and it was felt, therefore, that an attorney should serve.

According to the affidavit of James D. McCrudden, plaintiff's attorney, he suggested William Pistone, Esquire, to serve as administrator because Pistone "has been . . . engaged in estate work for a period in excess of twenty years," that he "is a frequent visitor to [plaintiff's attorney's] office as he refers trial work to the firm" and that "there were many reasons for recommending Mr. Pistone and among those reasons was the fact that I believed he would be a pleasure to work with and I knew there would be a fee of approximately $2,500.00 for administering the Estates and I preferred that he have the fee rather than some stranger." It appears further that Mr. Pistone was unknown to any of the members of the Miller family prior to the tragic event; that Gerald Jr. met him once after the accident in Mr. McCrudden's office at the time Mr. Pistone's appointment was suggested by McCrudden, and he has not spoken with Pistone since.

There is nothing in this record to suggest Pistone's special expertise in any matters that might be involved in this litigation, nor is there anything to indicate "any particular reasons for selecting an out-of-state person." Further it is patent that, "apart from the appointment of an out-of-state representative, the suit is wholly local in nature." Groh v. Brooks, *supra*.

Levine v. Flor, Civil Action 69–1971 (E.D.Pa. October 30, 1969, unreported) presented a somewhat similar situation. Defendants moved to dismiss that wrongful death and survival action on the ground of manufactured diversity. In that case, there was no affirmative showing that the appointment of plaintiff, a New Jersey attorney, was for any purpose other than to create diversity of citizenship. Reliance was based almost entirely on the affidavit of plaintiff's counsel which asserted that the selection of plaintiff was "to benefit the estate, because he was singularly qualified to act as administrator of decedents' estates." Judge Kraft there ruled that in the absence of evidence to support the conclusory statement of counsel, and in the absence of evidence adequately explaining why the surviving family member or any competent attorney or fiduciary residing in the same county as the survivors was not equally capable of performing the functions of administrator, the case should be dismissed.

I am in accord with the views expressed by Judge Kraft. To accept the reasons offered here for the appointment of an out-of-state administrator would be to make a mockery of the ruling of McSparran v. Weist and Groh v. Brooks.

The motion to dismiss will be granted.

---

3. Affidavit of Gerald A. Miller, Jr., p. 2.