C. G. BISHOP, Administrator of the Estate of Arthur Lee Baker, Jr., Deceased, Appellant,

v.

S. HENDRICKS, Jr., Appellee.

No. 73–1725.

United States Court of Appeals, Fourth Circuit.

Submitted Feb. 6, 1974.

Decided April 17, 1974.

William T. Jones, Greenwood, S. C., on brief for appellant.

James H. Watson and Carl G. Ferguson, Leatherwood, Walker, Todd & Mann, Greenville, S. C., on brief for appellee.

Before CRAVEN, RUSSELL and FIELD, Circuit Judges.

DONALD RUSSELL, Circuit Judge:

This is an action to recover under the wrongful death statute of South Carolina.[1] It arose out of a motor collision occurring in Newberry County, South Carolina. The deceased was a life-long citizen of South Carolina. The statutory beneficiaries of the action are likewise life-long citizens of South Carolina. The beneficiaries retained counsel to prosecute the wrongful death action on their behalf. After consulting with their counsel, they applied to the local probate court for the appointment of the plaintiff-appellant, a citizen of Georgia and a relative by marriage of the beneficiaries, as administrator in whose name the action might be prosecuted. This action was thereupon commenced as a diversity action in the District Court against the lessee-operator of the other vehicle involved in the accident.[2] The lessee of the other vehicle, who is the appellee on this appeal, was a citizen of South Carolina. He moved to dismiss the action for lack of diversity claiming in support of his motion that when a deceased leaves, as the deceased did in this case, no estate to be administered and the sole reason for the appointment of an administrator is to provide a nominal party plaintiff to institute the action, the benefits of which, if successful, pass directly to the statutory beneficiaries without any general administration, the citizenship of the administrator should be disregarded and the citizenship of the beneficiaries of the action should control in ascertaining federal diversity jurisdiction. The appellant-administrator countered with the contention that such a rule was applicable only when it could

---

1. Sections 1951–1952, Title 10, Code of Laws of South Carolina (1962).

2. There was a second defendant, whose citizenship was different from that of its co-defendant and that of the administrator. It did not join in the motion to dismiss and is not concerned in the controversy, since unless there was diversity between the plaintiff and the lessee-operator of the tractor-trailer, there could be no basis for diversity jurisdiction.

be found that the sole motive for the appointment of an out-of-state fiduciary was to create federal jurisdiction. The District Court, however, concluded, as did the Court in Nickell v. Westervelt (D.C.Va.1973) 354 F.Supp. 111, 112, and Johnson v. Worley (D.C.Va.1972) 353 F.Supp. 1381, 1382, that Miller v. Perry (4th Cir. 1972) 456 F.2d 63, "held that diversity of citizenship" in such a case as that here "is determined by the citizenship of the beneficiaries rather than by the citizenship of the administrator", and it reached that conclusion despite its remark that in its opinion the "motive" for the appointment of the out-of-state administrator in this case was not the creation of federal jurisdiction. It accordingly dismissed the action for want of jurisdiction. The administrator appeals. We affirm.

The appellant would confine the scope of *Miller* to the peculiar facts of that case; and since the facts in this case are different, he argues *Miller* is without application. *Miller*, however, was not phrased in the narrow terms of its own facts. The language of *Miller* was manifestly intended as a declaration of what one commentator has correctly denominated as "a substantial change in diversity jurisdiction".[3] The Court in that case was focusing generally on the broad, fundamental problem of determining the real party in interest, not in a procedural but in a jurisdictional sense,[4] and in making clear what, in the light of the decision in Kramer v. Caribbean Mills (1969) 394 U.S. 823, 89 S.Ct. 1487, 23 L.Ed.2d 9, was an "improper" or "collusive" joinder under Section 1359, 28 U.S.C. The emphasis "was on a fresh appraisal of an old problem."[5] By its decision, the Court was making a choice between the old, purely mechanical or "ritualistic" rule that an administrator, validly appointed, is always the real party in interest whose citizenship fixes diversity jurisdiction and what, on the other hand, has been aptly described as the more recent "substantive real party in interest test" as determined by the facts of the particular case.[6] The Court recognized that "there was nothing sacred in the customary rule that an administrator's citizenship governs, a principle which serves policies of judicial economy rather than federal-state comity" and concluded as a matter of principle that substance should prevail over mere procedure, that federal courts on jurisdictional issues should "assess the substantive relations between the parties to the controversy"[7] and that they should make "a realistic determination with respect to the presence of diversity."[8] It found authority for such an approach in *Kramer*, which directed, as construed in *Miller*, "that the duties and responsibilities of administrators should be taken into account in federal determinations of the relevancy of the citizenship of such a personal representative to the presence of diversity jurisdiction."[9] It held specifically that when

---

3. Note, Miller v. Perry: Further Complication in Determining Diversity Jurisdiction, 30 Wash. & Lee L.Rev. 282, 295 (1973).

4. "Real party in interest" as determined for procedural purposes under Rule 17(a) is quite different from the meaning of the term in the jurisdictional sense. Lester v. McFaddon (4th Cir. 1969) 415 F.2d 1101, 1105, n. 10.

5. Note, Federal Courts—Diversity Jurisdiction—When State Law Requires Wrongful Death Action to be Prosecuted by Resident Ancillary Administrator; Citizenship of Beneficiaries is Controlling for Diversity Purposes—Miller v. Perry, 47 N.Y.U.L.Rev. 800, 812.

6. Note, Federal Courts—Appointment of Administrator to Defeat Diversity Jurisdiction, 21 Journal of Public Law 293 (1973).

7. 47 N.Y.U.L.Rev., at p. 814.
   *See, also,* Cerri v. Akron-People's Telephone Co. (D.C.Ohio 1914) 219 F. 285, 292, approved in Newman, Manufacturing Diversity Jurisdiction, 14 Vill.L.Rev. 727, 735.

8. 456 F.2d at p. 67.

9. 456 F.2d at p. 65.
   *Cf.,* Note, Federal Jurisdiction—Citizenship of the Beneficiary Controls in Wrongful Death Actions Requiring a Resident Administrator, 51 N.C.L.Rev. 639, 644 (1973):
   " * * * the administrator is not *per se* the real party in interest; instead, the

the responsibilities of the administrator are solely to institute the wrongful death action—when he is what one Court has described as "an administrator *ad litem*" and no more [10]—the Court would "hinge the diversity determination to the citizenship of the wrongful death action beneficiaries, rather than to that of their representative." [11]

The result reached in *Miller* had long found advocates among legal scholars.[12] It has received wide approval from the legal commentators.[13] It is in conformity with the rule as stated by Professor Moore in his authoritative text:

> "Where a party sues (or is sued) as a receiver, representative of a class, assignee, subrogee, executor or administrator it is normally his citizenship that is material when jurisdiction is dependent upon the character of the parties. This is true also of the general guardian of an infant, or the curator or committee of a lunatic, when under the law of the state where

such fiduciary is appointed he has the status of a real fiduciary. But if the law of the state gives the administrator, guardian, or other representative the status of only a nominal fiduciary then the beneficiary or the ward, not the administrator or guarddian, is the real party in interest, and it is the citizenship of the beneficiary or ward, as the case may be, that is determinative." 3A, Moore's Federal Practice, pp. 112–4 (footnotes omitted).

"Such a determination", also, has the virtue that it "insures that federal jurisdiction will be invoked only when necessary to protect the party whose personal interest in the suit might be prejudiced by the presence of local bias", which "has been the historical view for why diversity jurisdiction originated". Note, Federal Jurisdiction—Citizenship of the Beneficiary Controls in Wrongful Death Actions Requiring a Resident Administrator, 51 N.C.L.Rev. 639, 646, and n. 44 (1973).[14] To permit the appoint-

courts have examined his duties and responsibilities before making any determination as to whose citizenship should determine diversity."
*See, also,* Note, 47 N.Y.U.L.Rev. 800, at 804, where, in summarizing the result in *Miller*, the editor said:
"In the view of the Fourth Circuit, *Kramer* mandated 'consideration of [the] duties and responsibilities of a representative party rather than a 'ritualistic' application of the principle that an administrator is the real party in interest for diversity purposes."

10. O'Brien v. Avco Corporation (2d Cir. 1969) 425 F.2d 1030, 1034.

11. 456 F.2d at p. 68.

12. *See* Note, Appointment of Non-Resident Administrators to Create Federal Diversity Jurisdiction, 73 Yale L.J. 873, 883 (1964):
"Thus, if pursuant to a state wrongful death statute or survivors act calling for appointment of an administrator *ad prosequendum*, an administrator is appointed who is not a citizen of the state in which the state is being probated, federal courts should be reluctant to grant federal jurisdiction to that administrator. His duties are temporary and related solely to the suit, for without the cause of action there would be no administrator, and the appointment of a non-

resident for such temporary and singularly directed activities gives rise to an inference that the appointment was primarily for purposes of obtaining federal jurisdiction."

13. *See,* Case Note, 47 N.Y.U.L.Rev. 800; Case Note, 51 N.C.L.Rev. 639; Case Note, 21 Journal of Public Law, 293; *contra,* Case Note, 30 Wash. & Lee L.Rev. 282.

14. *See,* Miller v. Perry, *supra,* at p. 67:
" * * * Diversity jurisdiction exists for the protection of the noncitizen who is obliged to sue or to be sued in the state of his adversary. It is for that reason that the device of appointing an out-of-state representative has been condemned."
*See, also,* White v. Lee Marine Corporation (5th Cir. 1970) 434 F.2d 1096, 1100:
" * * * Allowing this suit [by a nonresident administrator] to be brought in federal court would not advance any of the functions diversity jurisdiction was designed to serve."
*See, also,* Note, Manufactured Diversity of Citizenship, 2 Texas Tech.L.Rev. 304, 308 (1971) where, commenting on Bass v. Texas Power & Light Company (5th Cir. 1970) 432 F.2d 763, the editor said:
"In such situations, the non-resident administrator cannot plead that his case will be influenced adversely by local prejudice because the jury will know that he repre-

ment of a nominal non-resident fiduciary to create federal diversity jurisdiction would clearly "run counter to the general policy of viewing the federal courts as tribunals of limited jurisdiction whose subject matter jurisdiction principles should be applied with restraint," [15] and, through its artificial creation of diversity, would represent an "improper manufacture of jurisdiction" [16] in obvious violation of the purposes of Section 1359.

Even if it be conceded that the rule in *Miller* is normally of general application, the appellant, however, would restrict it to situations where the reason or "motive" assigned for the appointment of the administrator was to create diversity jurisdiction. It may be assumed that if there is a valid reason for the appointment of an out-of-state administrator that gives to his representation greater substantiality than a mere administrator *ad litem*, the citizenship of the administrator may be determinative of diversity. This exception was implicit in *Miller*, which drew a clear distinction between the situation where the administrator was merely an agent to sue "without stake" in the litigation as it were and where he had some sub-

stantial interest or stake in the proceedings. It was, also, recognized by implication in Lester v. McFaddon. But it must be remembered that, in a situation where an out-of-state administrator files a wrongful death action on behalf of resident beneficiaries, involving the death of a resident decedent in an accident occurring within the state, want of diversity will be presumed unless the record provides sufficient support for the conclusion that the representation of the administrator is not nominal but was based on a valid and substantial reason.[17] But for the reason or motive for the appointment to give the necessary substantiality to his representation that his citizenship will be regarded for diversity it must be more than an expression of sentiment or personal preference [18] or mere kinship with either the beneficiaries or the decedent.[19] Nor can it be established by some self-serving profession of good faith in the appointment. The reason or motive that will render the out-of-state administrator's citizenship important for diversity purposes must be one that harmonizes with the thrust and purposes of Section 1359 itself.[20] The history of

sents a local beneficiary. Therefore, the basic reason for diversity jurisdiction, local prejudice, will not be present."

To the same effect is Note, 1 St. Mary's L.J. 125, 129 (1969), commenting on McSparran v. Weist (3d Cir. 1968) 402 F.2d 867, 876, cert. denied sub nom. Fritzinger v. Weist, 395 U.S. 903, 89 S.Ct. 1739, 23 L.Ed.2d 217.

15. 6 Wright & Miller, Federal Practice, p. 717.

16. Lester v. McFaddon, *supra*, 415 F.2d at p. 1104.

17. McSparran v. Weist, *supra* (402 F.2d at p. 875).

18. *See* Renner v. Vitcov (D.C.Pa.1972) 339 F.Supp. 1020, 1022, in which the parents-beneficiaries of the action, prostrated by the loss of two sons in one accident, had secured the appointment of a business acquaintance, "a competent businessman", but one with "little experience or knowledge in the field of estate administration." Such considerations were found not substantial enough to give the administrator the status to support diversity.

19. *See* Kane v. Cameron (D.C.Pa.1971) 329 F.Supp. 933, 934–935. Here, a sister of the widow-beneficiary and a woman "capable of sound judgment", was appointed the out-of-state administratrix. The Court dismissed the action, saying:

" * * * Since all the interested parties, except administratrix, have been and are residents of Pennsylvania, and since the defendants reside and the accident occurred in Montgomery County, suit should have been instituted there."

*See, also,* Butler v. Colfelt (D.C.Pa.1970) 313 F.Supp. 527, aff. (3 Cir.) 439 F.2d 882; Richard v. Dervarics (D.C.Pa.1969) 302 F.Supp. 709.

20. *See* Pangaio v. Palmer Township (D.C.Pa. 1972) 343 F.Supp. 940. The beneficiaries, who spoke Portugese more fluently than they did English, consulted a close and intimate friend, in whom they had confidence and who assisted them in "a great many personal matters". The friend made inquiries into the potentiality of a wrongful death suit and employed the counsel to file suit. Because of their confidence in her, the friend was named

Section 1359 makes clear its purpose. It was enacted as Section 5 of the Act of March 3, 1875, 18 Stat. 470, for the purpose of denying the use of federal courts in suits which did not "really and substantially involve a dispute or controversy properly within the jurisdiction" of the federal courts. This the statute stated in express terms. When this section and the assignee provision of the original Judiciary Act of 1789 were combined in the revision of 1948, this statement of express purpose was omitted but not because it was the intention of the revisers to alter in any way the purpose of the statute;[21] the purpose of the revision and of the omission was to simplify the two provisions in order to eliminate "some of the abstruse distinctions that had grown up * * *". O'Brien v. Avco Corporation, *supra* (425 F.2d at p. 1033). That the purpose of the statute remained the same was emphasized by the Circuit Court opinion in *Kramer,* where "improper or collusive" joinder for jurisdiction was declared to result when it rested on *"colorable assignment or other device without substance"* (Italics added.)[22] And this was the construction adopted and applied in *Miller.* Accordingly, any appointment of an out-of-state administrator, which is nominal and "without substance" and which, if given effect for jurisdictional purposes, has the effect of giving diversity to an action which does not "really and substantially involve a dispute or controversy" between citizens of different states, is violative of the purposes of, and falls under the interdict of, Section 1359.[23] The courts should accordingly evaluate the reasons for the appointment and determine whether the reasons given logically or realistically establish that, as a result, the fiduciary sustains more than a nominal relationship to the litigation.[24] The Courts have often done just that and,

administratrix and filed suit in her name. Finding that such circumstances failed to give a reason that would support diversity based on the friend's citizenship, the Court said:
"* * * Nor does the fact that the decedent's family had confidence in plaintiff justify her appointment in the absence of any special competence in the administration of estates." (p. 942)

21. *See,* McSparran v. Weist, *supra* (402 F.2d at pp. 872, 873):
"* * * In combining these two provisions the reviser intended no alteration in the meaning of § 37 which empowered the district court to dismiss a suit 'at any time * * * [when] such suit does not really and substantially involve a dispute or controversy properly within the jurisdiction of said district court * * *.'" Those words, the Court proceeded to add, "give content to its [the statute's] otherwise indefinite and ambiguous words 'improperly' or 'collusively'."

22. Caribbean Mills, Inc. v. Kramer (5th Cir. 1968) 392 F.2d 387, 393, aff. 394 U.S. 823, 89 S.Ct. 1487, 23 L.Ed.2d 9.

23. Contrary to the view of the appellant, this accords with what this Court held in Lester v. McFaddon, *supra.* There, we said (415 F.2d at p. 1106, n. 11):
"It is the lack of a stake in the outcome coupled with the motive to bring into a federal court a local action normally triable only in a state court which is the common thread of the cases holding actions collusively or improperly brought."
*See,* White v. Lee Marine Corporation, *supra* (434 F.2d at p. 1098) where the Court said:
"* * * This requirement of substantive as well as formal validity of the representative's appointment [to support diversity] has been recognized often in subsequent decisions."
*Cf.,* 6 Wright & Miller, Federal Practice and Procedure, p. 720:
"Recent cases indicate that the permissive attitude toward allowing jurisdiction to be manufactured by assignment or appointment is undergoing a serious re-evaluation. Some federal courts have noted that the anti-collusion statute was enacted in order to preserve the limited character of diversity jurisdiction in the federal courts and have suggested that it should be applied when a party has attempted to create subject matter jurisdiction that would not otherwise exist."

24. A partial list of the factors to be considered in such evaluation is set forth in Groh v. Brooks (3d Cir. 1970) 421 F.2d 589, 595. *See,* for instance, Rogers v. Bates (8th Cir. 1970) 431 F.2d 16, 21:
"* * * We hold the appointment of a representative of a living person, such as a guardian or conservator who undertakes no duties nor obligations to his ward or beneficiary save those incident to the institution

on the basis of their evaluation, have determined whether the citizenship of the administrator is to be given effect. As we have said, the fact that the beneficiaries are prostrated by grief, or are related to the out-of-state administrator, or are relying on the administrator for advice or that the out-of-state administrator is "a competent business man", will not justify diversity based on the administrator's citizenship.[25] Confidence in the superior business judgment and ties of friendship, even intimate ones, are equally unavailing.[26] On the other hand, O'Brien v. Stover (8th Cir. 1971) 443 F.2d 1013, 1015–1016, instances circumstances in which the appointment will control diversity. In that case, the out-of-state administratrix was the daughter of the deceased and "her sole heir". Under these circumstances, the Court said, "The diversity here is bona fide and plaintiff's appointment as administrator was natural and logical under the circumstances. She was the real party in interest. These facts are sufficient to establish diversity jurisdiction."[27] Again, when a general administrator, having assets other than the wrongful death suit to administer and who, incidental to his duties as general

administrator, files a wrongful death suit, it has been held, though not uniformly, that his citizenship may be considered for diversity.[28] In summary, only if the Court can conclude that the out-of-state administrator has something more than a nominal relationship to the litigation will the citizenship of an out-of-state administrator sustain diversity, and any reason or motive for the appointment which does not elevate his relationship to the litigation above the level of a nominal party is irrelevant to the issues of diversity.[29]

In this case, the administrator has failed to establish any substantive facts or to assign any valid reasons for his appointment that would give "substance" to his representation or fix his status in the suit as different from nominal. Without any "real [or] substantial interest in the outcome of the litigation", he possesses "no stake in the litigation".[30] He has nothing to gain by the suit save a fee for the use of his name if successful, and, if the suit is lost, nothing to lose.[31] In fact, it would seem that the beneficiaries of the action, if they chose to, could settle the action, with or without consulting him.[32] Nor is the prosecution of the action incidental to

of a lawsuit, falls within the proscription of § 1359 and is insufficient to invoke federal jurisdiction on the basis of diversity of citizenship. In such cases, we look to the citizenship of the ward or beneficiary."

*Rogers*, it is true, dealt with a conservator —but the same rule was applied to a trustee or administrator in Bartnick v. Reader Company, Inc. (8th Cir. 1973) 487 F.2d 1021.

25. *See* note 19 and 20.

26. Pangaio v. Palmer Township, *supra* (343 F.Supp. at p. 940).

27. To the same effect are Janzen v. Goos (8th Cir. 1962) 302 F.2d 421; County of Todd, Minn. v. Loegering (8th Cir. 1961) 297 F.2d 470, and Davis v. Carabo (D.C.S.C.1970) 50 F.R.D. 468, 469. In Janzen v. Goos, *supra*, 302 F.2d at p. 425, the Court said:
 " * * * No question is here raised as to the plaintiff, in her capacity as administratrix, being the real party in interest and the provisions of RRS Nebraska, 1943, § 25–304, confirm this. In any event, the citizenship of all the beneficiaries coincides with that of the plaintiff."

28. Joyce v. Seigel (3d Cir. 1970) 429 F.2d 128; McCoy v. Blakely (8th Cir. 1954) 217 F.2d 227; Lawson v. Morgan (D.C.Pa.1973) 352 F.Supp. 282, *but cf.*, Levenger v. Lehigh Valley Railroad Co. (3d Cir. 1970) 435 F.2d 822.

29. *Cf.*, Kenebrew v. Columbia Land and Timber Co. (5th Cir. 1972) 454 F.2d 1146, 1147:
 " * * * Allowing this suit [by an out-of-state administrator *ad litem*] to be prosecuted here would not advance any of the functions that diversity jurisdiction was designed to serve."

30. Dougherty v. Oberg (D.C.Minn.1969) 297 F.Supp. 635, 639.

31. Section 1955, Title 10, Code of Laws of South Carolina (1962) limits the liability for costs on the part of the administrator to assets in his hands and by implication absolves the fiduciary of any personal liability, should the action fail.

32. Aldridge, Admr. v. Watts Mill (1925) 131 S.C. 222, 127 S.E. 213.

any general fiduciary duties of an administrator.[33] There are no assets in the estate other than this suit. The appellant has no knowledge of the accident out of which the litigation arose and can contribute nothing to its prosecution. He actually had no part in the selection or employment of counsel. The employment of counsel occurred before his appointment and under the circumstances, he, like the representative in Lester v. McFaddon, *supra* (415 F.2d at p. 1103) "can hardly be expected to ride herd upon them (i. e., counsel) or exercise any effective supervision of their conduct of the litigation". It is true, he is the nominal plaintiff but this is simply because the statute so commands.[34] As the Court emphasized in Bennett v. Ry., Gas & Electric Co. (1914) 97 S.C. 27, 30, 81 S.E. 189, " 'That the act requires the personal representative (administrator or executor) to sue need not trouble us; *the Legislature could as well impose that duty on the sheriff or the coroner.* The proceeds recovered are not for creditors, or the family generally, or for the legatees, but is [are] strictly confined to certain members of the family of the deceased.' " (Italics added. Quoting from Reed v. Ry. Co., 37 S.C. 42, 53, 16 S.E. 289, 291).

The only reason assigned for his appointment and sought to justify diversity on the basis of his citizenship was that he was more experienced in business affairs than the father or mother of the deceased, the beneficiaries of the action. This reason is not persuasive. The beneficiaries, either of whom would have been the natural fiduciary, chose the attorney to prepare the suit and to try it. That was substantially the only function the administrator in a case such as this would perform. The suggestion that the father and mother were without business experience was unimportant since there could be no occasion to use business experience in the very limited, nominal role to be played by the administrator.

In summary, the appellant is, so far as this suit is concerned, a "straw party", appointed just as a guardian *ad litem* solely for the purposes of providing a nominal plaintiff for the maintenance of this action. His appointment is manifestly an artificial creation of federal diversity and as such cannot support jurisdiction. It is, for all practical purposes, similar to the situation in First Nat. Bank of Amherst, Mass. v. Fulcher (D.C.Va.1954) 119 F.Supp. 759, p. 763,[35] where the Court, "looking at reality" and determining diversity in the citizen-

33. *Cf.*, 47 N.Y.U.L.Rev. 800, 811:
   "Usually, the prosecution of an action [by an administrator] is incidental to the general fiduciary duties of a personal representative; in *Miller*, however, it was the only responsibility of the ancillary administrator. Moreover, in enforcing the claim he did not act in the normal capacity of an administrator as the representative of the decedent estate, but rather as a statutory trustee for the benefit of potential recipients."

34. Paraphrasing the language of the Court in Martineau v. City of St. Paul (8th Cir. 1949) 172 F.2d 777, 780, his position may accurately be analogized to a mere "agent of the Probate Court. * * * appointed for the purpose of enforcing a claim" of the statutory beneficiaries.
   *See, also,* O'Brien v. Avco Corporation, *supra* (425 F.2d at p. 1034):
   " * * * The appointment of an administrator *ad litem*, whose sole function is to collect the proceeds of a lawsuit and turn them over to the beneficiary, is far more akin

to the 'collection' than the 'actual transfer' line of cases, and it is difficult to justify *Corabi* [Corabi v. Auto Racing, Inc., 3 Cir., 264 F.2d 784] even on the basis of *Black & White Taxicab* [Black & White Taxicab & Transfer Co. v. Brown & Yellow Taxicab & Transfer Co., 276 U.S. 518, 48 S.Ct. 404, 72 L.Ed. 681]."
   In McSparran v. Weist, *supra* (402 F.2d at p. 874), speaking to a situation where the citizenship of a guardian was involved, the Court said:
   " * * * His (the guardian's) appointment may have authorized him to bring suit but his nominal status does not make his citizenship determinative for purposes of diversity."

35. This case was disapproved in Holt v. Middlebrook (4th Cir. 1954) 214 F.2d 187, 189, but it is in accord with the modern rule as enunciated in the decisions already cited, including *Lester* and *Miller* from our own Circuit.

ship of the beneficiaries of the Virginia wrongful death statute rather than that of the administrator, said:

" * * * The personal representative is nominally the plaintiff solely because the statute says that he must be. Should there be a recovery, no creditor could touch it. No administration is necessary. Any recovery would go to the sons as the jury might direct."

We have not overlooked that the District Court stated that, if the issue were properly before him he would find that the "motive" in the appointment of the appellant as administrator was not improper. He gave no reason for such opinion. As we have indicated, however, the propriety of an administrator's appointment in a case such as this is determined under Section 1359 by whether the administrator has something more than a nominal interest at stake in the litigation.[36] The appellant-administrator manifestly did not have such an interest and the District Court properly dismissed the action on jurisdictional grounds.

Affirmed.

36. *See*, for a very similar case factually, Pistone v. Romano (D.C.Pa.1972) 349 F.Supp. 293, 295, aff. (3 Cir.) 481 F.2d 1399.