**BLITCH FORD, INC., Plaintiff,**

v.

**MIC PROPERTY AND CASUALTY INS. CORP. and Robert F. Williams, Defendants.**

**No. 7:97–CV–21 (WDO).**

United States District Court,
M.D. Georgia,
Valdosta Division.

Oct. 21, 1997.

As Amended Nov. 20, 1997.

---

Daniel Laverne Studstill, Nashville, GA, Berrien L. Sutton, Homerville, GA, for Blitch Ford, Inc.

Clayton H. Farnham, Atlanta, GA, William P. Claxton, Atlanta, GA, for MIC Property and Cas. Ins. Corp.

Alan David Tucker, Brunswick, GA, for Robert F. Williams.

## ORDER

OWENS, District Judge.

This case arises out of a fire that destroyed the property of Blitch Ford in Homerville, Georgia. Before the court are two motions to remand this case to the Superior Court of Clinch County and a motion to enforce an alleged settlement agreement. The court heard from all parties regarding the issues of the alleged settlement and the existence of subject matter jurisdiction in an in-chambers conference held in Macon on August 6, 1997, and has allowed all parties to supplement the record with briefs and any other documentary or recorded evidence relevant to the issues currently before the court. Having carefully considered the arguments of counsel, the relevant case law, and

the record as a whole, the court now issues the following order.

## I. Procedural History

Farmers and Merchants Bank ("FMB"), through its attorney Daniel Studstill, filed this action on February 24, 1997, in the Superior Court of Clinch County.[1] In the complaint, FMB demands payment on a fire insurance policy from MIC Property and Casualty Insurance Co. ("MIC"), and payment on a note from Robert F. Williams and Blitch Ford.[2] Pursuant to developments which are fully set forth below, MIC forwarded to FMB's attorney Studstill a check for $290,000 in an attempt to settle all of FMB's claims against all defendants.

Blitch Ford filed a counterclaim against FMB and cross-claims against MIC and Robert F. Williams on March 13, 1997, claiming, inter alia, that it rather than Robert Williams was entitled to a portion of the settlement check. On the same day, Blitch Ford asked for, and was granted by Clinch County Superior Court Judge C. Dane Perkins, a temporary injunction which allowed FMB to disburse only the unchallenged portion of the settlement check.

MIC timely filed a notice of removal to this court on March 24, 1997. Removal was based on diversity jurisdiction as provided for in 28 U.S.C. § 1332. MIC argues that removal was and is proper because (1) all claims filed by the only non-diverse party (FMB) were settled by prior agreement, and (2) the only claim filed against FMB (the "counterclaim" filed by Blitch Ford against FMB) is a meritless claim instituted in an attempt to destroy diversity. FMB and Blitch Ford both argue that removal was improper due to a lack of diversity, and request the case be remanded to Clinch County Superior Court.

## II. Facts

On July 7, 1994, FMB made a loan to Robert F. Williams secured by real estate in Clinch County, Georgia, which at the time was used as Bob Williams Ford. The amount of the note as of the time this lawsuit was filed was $218,260.42. Sometime thereafter, Blitch Ford assumed responsibility for the note from Williams as part of a series of agreements made in connection with the sale of the dealership to Blitch Ford. In addition, while Williams retained title to some of the property used by the dealership, Blitch Ford obtained an option to purchase that property from Williams in the future for $1.00. This option was not exercised prior to the fire, but was exercised subsequent to the fire.

On September 1, 1995, Blitch Ford purchased a fire insurance policy from MIC naming Blitch Ford as the named insured and FMB as the loss payee. Certain portions of Blitch Ford's property held by FMB as collateral on the note were insured under the fire policy. On June 20, 1996, the property in question, with an approximate value of $290,000, was totally destroyed in a fire.

On January 23, 1997, before this lawsuit was filed, FMB's attorney Daniel Studstill mailed a letter demanding payment on the fire policy to William Claxton, MIC's attorney. In the letter, Studstill demanded payment from MIC of "the proceeds due my client" (See Exh. A to Def. Motion to Enforce Settlement [Tab # 1 7]). The letter did not contain a specific dollar amount due under the policy. The letter did, however, explain that Studstill considered MIC's failure to pay on the claim in the seven months after the fire[3] to be bad faith justifying the statutory penalty and attorney's fees contemplated in O.C.G.A. § 33-4-6. The letter ended by stating that if payment was not received

1. At the time suit was filed, Johnny Smith, the man responsible for cleaning up the debris from the fire, had not yet been paid and brought suit as a co-plaintiff with FMB seeking quantum meruit. Soon after suit was filed, MIC settled all claims with Smith, and he filed a voluntarily dismissal with prejudice. Smith's settled claims are irrelevant to the issues currently before the court.

2. It is undisputed that for purposes of diversity jurisdiction, the domiciles of the parties are as follows: FMB—Georgia; MIC—Michigan; Robert F. Williams—Florida; Blitch Ford—Georgia.

3. The record shows that the most likely reason MIC had not yet paid the proceeds due under the policy was an ongoing investigation into the cause of the fire, which was suspected of being arson. The court has no facts or knowledge regarding the allegation of arson, and the issue of the cause of the fire is in no way before the court.

within 15 days of the January 23 date of the letter, then FMB would file suit seeking damages, the statutory penalty and attorney's fees.

What happened next over the course of several telephone conversations is in dispute. In short, Claxton alleges he and Studstill reached an agreement over the telephone on February 28 completely settling FMB's claims against MIC and the other two defendants. He claims they also agreed that the check would be made out for $290,000, or the full amount of the policy. The portion of this amount above the $218,260.42 amount of the loan was to be sent to FMB on behalf of Robert F. Williams, who still owned the damaged property. Williams had requested that MIC pay his portion of the fire policy proceeds to FMB in payment of a separate debt he owed to FMB in the amount of approximately $60,000. Thus, according to Claxton, the agreement was that FMB would receive the $290,000 check in payment of the two separate loans, and forward the small remaining balance to Williams. Finally, Claxton claims Studstill told him that FMB would forego the claims for statutory penalties, costs, attorney's fees and per diem charges set forth in the complaint.

Studstill, on the other hand, claims there never was any agreement, and that he did not have authority to settle the suit unless MIC agreed to pay FMB the full balance of the loan plus the statutory penalty, attorney's fees, per diem charges and costs. Instead, Studstill claims he only agreed to review the release and dismissal papers from Claxton and to discuss the offer of settlement with his client FMB.

Operating on his understanding that there was a settlement, Claxton contacted MIC and arranged to have a check for $290,000 sent to Studstill. Studstill received the check, which was made out to FMB and Robert F. Williams, on March 6, 1997. The check was not returned, and Studstill did not call Claxton or anyone at MIC to inquire about the check or why it was sent.

Robert Williams has filed an affidavit stating that on at least two occasions he spoke to Larry Lee, CEO of FMB, and Studstill over the telephone about the lawsuit. Williams says he was told by Lee and Studstill on both occasions that FMB and MIC had reached a settlement. Williams understood the settlement to be that MIC would forward a check for $290,000, which would pay off the property-backed $218,260.42 loan and his separate $60,000 debt owed to FMB. According to Williams, during one of the conversations it was agreed that since the settlement check from MIC was jointly payable to FMB and Robert F. Williams, FMB would courier the check to Williams in Florida so that Williams could endorse it. Once he had endorsed the check, FMB would dismiss its lawsuit as to all defendants.

Williams also states that he received a phone call from Larry Lee on March 12, 1997, wherein Lee advised him that soon after the Blitch family had learned that MIC had issued the check payable to FMB and Williams, Blitch Ford had filed papers with the court and had asked the court to place the money in escrow until the correct recipient of the proceeds of the check could be determined. Lee told Williams it was very important that he endorse the check so that it could be deposited before MIC found out about the court order placing the money in escrow. The next morning, on March 13, at 9:00 a.m., Larry Lee's son arrived at Williams' apartment in Altamonte Springs, Florida, with the check for Williams to endorse. Williams endorsed the check and turned it over to Lee's son, who used Williams' phone to call Larry Lee to tell him the check had been endorsed.

A tape recording offered by MIC as evidence of a settlement shows that on the morning of March 12 Studstill left a message on Claxton's voice-mail messaging system. Below is a transcript of the message:

"Mr. Claxton this is Danny Studstill, it's Wednesday morning the 12th of March, it's almost 9:00. I received by Federal Express last Tuesday or Wednesday the check for $290,000. I thought I understood you to say that you were going to be forwarding me some documents, some release type documents you wanted me to review and sign before we negotiated the check. I'm not going to sit on this check much longer. Either we got a deal or we don't got a deal. So, if you want us to sign

any more documents you better go ahead and get moving with them. Otherwise, we don't have a deal. Thank you."
(Exh. "C" to Def. MIC's Motion to Enforce Settlement [Tab # 1 17] ).

On March 13, the day after he received the message, Claxton prepared and had faxed to Studstill a dismissal and release. · Fax receipts show that on March 13, Studstill's office received the fax of the release at 10:27 a.m., and the fax of the dismissal order at 12:10 p.m.

On that same day, Blitch Ford filed a counterclaim against FMB and cross-claims against MIA and Williams claiming that the payment to FMB was a conspiracy to avoid paying money rightfully owed to Blitch Ford. Specifically, Blitch Ford claims Robert Williams was not entitled to any proceeds of the policy because he was neither a named insured nor a loss payee. Along with its counterclaim, Blitch Ford sought a temporary injunction preventing FMB from dispersing the remaining proceeds of the check to Robert Williams.[4]

The Clinch County Superior Court clerk's office stamp shows that Blitch Ford's counterclaim was filed at 8:16 a.m. on March 13, 1997. Judge C. Dane Perkins entered an order granting the temporary injunction to Blitch Ford at 9:00 a.m. that same day. The order mandated that the check be negotiated, that the $218,260.42 owed to FMB be paid out, and that the remaining portion owed to Robert Williams be held in an interest bearing account until further order of the court. According to the court's order, the injunction was entered after a hearing of which Blitch Ford claims it notified MIC and Williams. MIC denies ever having received notice of the injunction hearing.

On March 20, 1997, Claxton spoke to Studstill by telephone. According to Claxton, Studstill told him that there was a problem with the settlement, and that if Claxton repeated what Studstill was about to tell him Studstill would deny ever having said it. Claxton says Studstill then told him that the Blitch family sat on the board of directors of FMB and had instructed Studstill that despite his agreement with Claxton, and despite the fact that they had already negotiated the $290,000 check, there was to be no settlement. Claxton says Studstill then advised him that the only way FMB would agree to release MIC was if MIC paid FMB an additional 25% penalty and reasonable attorney's fees.

MIC filed a notice of removal to this court the following week. Blitch Ford and FMB have moved the court to remand the case to Clinch County Superior Court. MIC has moved the court to enforce the settlement it claims was reached regarding all of FMB's claims, and to realign the remaining parties to reflect their true interests.

### III. Discussion

The question of whether the matter was properly removed to this court hinges on whether there was indeed a settlement between MIC and FMB pursuant to which FMB had agreed to dismiss all claims against all defendants. If such a settlement did exist, then FMB's claims were extinguished once MIC had satisfied its obligations under the settlement by forwarding to FMB the check and the release and dismissal forms. While there is the additional matter of Blitch Ford's counterclaim against FMB, which will be addressed below, once FMB is gone from the litigation, complete diversity exists with regard to the remaining parties. Thus, the motion to enforce settlement and the motions to remand are essentially the same issue, and the court's decision with regard to the former will dictate the outcome of the latter as well.

In deciding whether removal was proper, district courts are empowered to make findings of fact in order to determine the factual basis for subject matter jurisdiction premised on· diversity. *See Green v. Hale,* 433 F.2d 324, 328–29 (5th Cir.1970); *Franzel v. Kerr Manufacturing Co.,* 959 F.2d 628, 630 (6th Cir.1992); *Sea Marsh Group, Inc. v. SC Ventures Inc.,* 111 F.3d 129, 1997 WL 173232, at **4 (4th Cir., April 11, 1997) (unpublished opinion). Furthermore, a mo-

---

4. The record shows that Margaret (Peg) Blitch,. and Brett Blitch are the sole stockholders of Blitch Ford. In addition, Brooks Blitch, a Superi- or Court Judge, is a member of the Board of Directors of FMB (Studstill Aft., ¶ 17).

tion to enforce a settlement is in the nature of an equitable action for specific performance of a contract, and, as such, is a matter to be resolved by the court rather than by a jury even though it may involve factual disputes. *Ford v. Citizens and Southern National Bank,* 928 F.2d 1118, 1122 (11th Cir. 1991).

The rules governing the court's decision today were concisely laid out in the Eleventh Circuit decision of *Wong v. Bailey,* 752 F.2d 619, 621 (11th Cir.1985), which cites controlling Georgia law for the following propositions.

> The construction and enforcement of settlement agreements are governed by principles of the state's general contracts law. . . . . Under Georgia law, an agreement in settlement of a pending lawsuit must meet the same requisites of formation and enforceability as any other contract. Thus, there must be a meeting of the minds between the parties as to the terms of the contract. Assent to the terms of an agreement can be implied from the circumstances, and conduct inconsistent with a refusal of the terms raises a presumption of assent upon which the other party can rely. An attorney's consent to an agreement is binding on his client.

*Id.* (citations omitted).

■ Bearing in mind these rules of contract, the court finds that there was a settlement of all of FMB's claims against all the defendants prior to Blitch Ford's filing of its counterclaim and cross-claims in Clinch County Superior Court. This finding is premised on three totally independent and equally compelling pieces of evidence. First, the transcript of the phone message left by Studstill on Claxton's machine strongly indicates that the two attorneys had previously agreed that FMB would dismiss all claims against all defendants in return for MIC's $290,000 check. In leaving the message, Studstill stated, "if you want us to sign any more documents you better go ahead and get moving with them. Otherwise, we don't have a deal." This necessarily implies that, contingent upon Studstill's receiving the documents, the attorneys did have a deal. Claxton prepared and faxed the documents to Studstill on the very next day. MIC had already sent, and Studstill had already re-

ceived, the check for full payment of the amount of the policy. Under these circumstances, FMB cannot claim that MIC somehow failed to meet its obligations under the agreement within a reasonable time.

Second, the testimony of Robert F. Williams, an independent third party, supports this interpretation. His understanding is in accord with Claxton's in all respects.

■ Finally and most importantly, as noted above, assent can be inferred from conduct inconsistent with a refusal of the terms, and this raises a presumption of assent upon which the other party—and in this case the court—can rely. When Studstill received a check for the full amount of the policy from MIC, he did not return the check. Nor did he call Claxton or MIC to inquire as to why the check was sent. Instead, Studstill held the check for approximately one week, then hastily had the check brought by courier to Florida to be endorsed so that it could be negotiated before MIC learned that there was a problem with the settlement. The court finds this conduct to be highly consistent with MIC's claim that a settlement was reached, and highly inconsistent with FMB's allegation that the negotiations were at a preliminary stage. The court's experience in these matters has made one thing very clear: insurance companies do not part with their money without good reason. The only plausible reason for MIC's sending the check is that it believed a settlement had been reached. FMB's conduct up to the point where extraneous circumstances became involved shows that it believed the same thing.

■ Given the evidence cited above, the court finds that MIC and FMB had reached an agreement. Moreover, the parties, terms and scope of the agreement are clearly memorialized in the release and dismissal documents drafted by Claxton and faxed to Studstill on March 13, which fully comport with both Claxton's and Williams' understanding of the terms of the agreement. These documents indicate that the agreement was to be in settlement of all of FMB's claims against all defendants (See Exhs. D and F of Def. MIC's Motion to Enforce Settlement Tab #17). The court further finds that said agreement was knowingly and fairly reached by attorneys knowledgeable

about these types of contracts, and is therefore as fully binding on the parties as if the matter had been adjudicated. *Reed By and Through Reed v. United States,* 891 F.2d 878, 880–81 (11th Cir.1990).

The practical effect of this court's upholding of the settlement is to dismiss all of FMB's claims against all defendants, thereby effectively removing FMB from the litigation. Blitch Ford argues, however, that its counterclaim against FMB still remains, and necessitates that FMB remain a party. Because Blitch Ford and FMB are domiciled in Georgia, Blitch Ford argues that there is no diversity and the case must be remanded.

 The court respectfully disagrees. Blitch Ford's sole claim against FMB is over proceeds from the insurance policy which it claims it was owed rather than Robert Williams or FMB. The proper avenue for recovery of any money owed to Blitch Ford under the insurance policy is to sue MIC, the insurer, rather than FMB, who is merely the recipient of other funds distributed by MIC under the policy. Indeed, Blitch Ford has not alleged that it has a contractual relationship of any kind with FMB that would give rise to a claim under the policy. Under these facts, the court finds that MIC, the removing party, has met its burden of showing that Blitch Ford has absolutely no possibility of recovering against FMB under the policy in state court, and therefore has established that FMB was fraudulently joined to defeat diversity jurisdiction. *Crowe v. Coleman,* 113 F.3d 1536, 1538 (11th Cir.1997).

 As a final matter, the removing parties have asked that the parties be realigned to better reflect their respective interests. The principle of realignment is one usually associated with federal courts attempting to discern whether diversity jurisdiction properly exists. *Development Finance Corp. v. Alpha Housing and Health Care, Inc.,* 54 F.3d 156, 159 (3d Cir.1995). As the Eleventh Circuit has noted, the court has an affirmative duty to look beyond the parties' own labels of "plaintiff" and "defendant" in order to arrange the parties according to their actual sides in the dispute. *Id.*

In light of the court's holdings above, the court finds that realignment is proper in this case in order to reflect the fact that the original claims filed by FMB are no longer pending, and that FMB is no longer a party plaintiff. Therefore, the court hereby realigns the parties so that Blitch Ford is the plaintiff, and MIC and Robert Williams are defendants.

## *IV. Conclusion*

Accordingly, MIC's motion to enforce the settlement, having been satisfied by full payment on the amount of the policy to FMB, is **GRANTED**. FMB's claims for attorney's fees, statutory penalties, per diem charges, and costs of the action are all **DISMISSED** pursuant to that agreement. Blitch Ford's counterclaim against FMB is likewise **DISMISSED**. Both FMB's and Blitch Ford's motions to remand are **DENIED**. The parties shall be **REALIGNED** to accurately reflect their respective positions as follows: Blitch Ford, Inc., Plaintiff, v. MIC Property and Casualty Insurance Co., Inc. and Robert F. Williams, Defendants. Let the matter proceed with discovery.